COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| GEORGE ASHLEY, | § | No. 08-11-00319-CR |
| Appellant, | § | Appeal from the |
| v. | § | 396th District Court |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC# 1215205D) |
| | § | |

## **O P I N I O N**

George Ashley ("Ashley" or "Appellant") appeals his conviction of possession of cocaine of more than one gram and less than four grams with intent to deliver, for which he was sentenced to thirty (30) years' confinement in the Institutional Division of the Texas Department of Criminal Justice.   Ashley argues that the trial court erred by failing to conduct an informal inquiry required by Article 46B of the Texas Code of Criminal Procedure where Ashley exhibited conduct that raised the issue of whether Ashley was competent to stand trial.   For the reasons that follow, we affirm.[1]

## **BACKGROUND**

---

[1] This case was transferred from the Second Court of Appeals to this Court pursuant to a docket equalization order entered by the Texas Supreme Court.  *See* TEX.GOV'T CODE ANN. § 73.001 (West 2005).  We have applied precedent of the Fort Worth Court of Appeals.  *See* TEX.R.APP.P. 41.3.

On September 20, 2010, Officer Coleman of the Fort Worth Police Department was working undercover with the narcotics task force. That evening, Officer Coleman was partnered with Officer Lopez in order to conduct undercover drug purchases. While at an old gas station, they noticed a woman whom Officer Coleman had spoken with earlier that day in a car with Ashley. Officer Coleman spoke to Ashley, who was in the driver's side of a vehicle, and negotiated the purchase of $100 of crack cocaine. Ashley left to obtain the cocaine and the deal was completed a short while later. Officer Coleman testified that Ashley was the driver and that he appeared to be coherent and acted with intent to sell the crack cocaine.

Officer Coleman signaled a nearby marked police cruiser to follow Ashley's vehicle and arrest him for narcotics trafficking. Seeing those police officers, someone threw another bag of crack cocaine out the driver's side window of the vehicle.

Ashley was charged in a two-count indictment; one count of possession of cocaine of more than one and less than four grams with intent to deliver; Count Two charged Ashley with possession of cocaine of more than one and less than four grams. The indictment included a habitual offender notice. Prior to trial the State waived the second paragraph of Count One and the entirety of Count Two.

At trial, testimony was introduced regarding the previous trial date, which was set for June 20, 2011. A deputy testified that Ashley was acting unstable around the eve of the trial. Counsel for Ashley filed a Motion for Competency Exam on June 17, 2011. An exam was held, and Ashley was found competent to stand trial.

At the plea hearing held on August 15, 2011, the trial court read the charges to Ashley and asked him whether he understood the charges pending against him, to which Ashley responded

2

"[y]es." When asked about his understanding of the punishment range of Count One, Ashley responded "[u]h-huh," and when asked the same about the punishment range of Count Two, Ashley nodded his head. When asked by the trial court whether he understood the range of punishment based on his two prior convictions, Ashley said "I think so." Ashley again nodded his head when asked about the range of punishment for the state jail felony, and replied "I think so" when asked if he understood how the state jail felony punishment range was affected by his prior convictions. When asked if he understood the minimum punishment if found guilty of the two offenses and if his prior felonies were proven, Ashley responded "[n]ot really." Following an aside with his counsel, Ashley responded to the trial court's questions with statements including: "[y]eah, I know;" "[y]es;" "I think so;" asking the court if he could be tried for both cases; stating that "[i]t happened at the same time;" and nodding his head affirmatively. Towards the end of the hearing, Ashley said that he did not understand the minimum sentence if he rejected the plea offer, then asked for a new lawyer because he had an argument with his counsel and that "he put me on 55A, where you got to wear a muumuu." Ashley then rejected the plea offer.

The arraignment and pretrial motions were held on August 29, 2011. Ashley gave conflicting answers, saying he thought he understood the charges, then that he did not. Ashley stated "[t]hey're crawling on me," and "[t]he voices won't stop messing with me." The trial court stated:

> Well, Mr. Ashley, you have been determined to be competent, and I'm not impressed with now all of a sudden you're claiming things are crawling on you and all of that stuff because we are right here getting ready to pick a jury and I'm not going to let you – I'm not going to let you do that. We are not going to delay the trial of this case simply because you're saying you're hearing things. I am not satisfied that you're incompetent, so we're going to proceed. Okay.

3

Ashley repeated "[t]he voices won't stop." The trial court reiterated that based on its observations, it was satisfied that Ashley was competent and that his behavior that day was an attempt to keep from proceeding to trial. Ashley's counsel entered a plea of not guilty to the charged offenses.

A jury trial was held on August 30 through September 1, 2011. Before *voir dire* began on August 30, 2011, the trial court noted that Ashley was not present and that the court was informed that the only way Ashley could appear in court was "if he's Tased or gassed or sprayed or something and then brought forcibly;" that Ashley had removed his clothes in his cell; and refused to talk to anybody. Ashley's counsel requested that the trial court hold another hearing pursuant to Sections 46B.004(a) and (b) of the Texas Code of Criminal Procedure. Ashley's counsel asked that the court take judicial notice of business records, specifically 311 pages of mental health records from the Mental Health Mental Retardation ("MHMR") of Tarrant County Hospital, which the court did.[2] These records dated from 2000 and indicated that Ashley has had a dual diagnosis of chemical dependency and major depressive disorder with schitzoaffective manifestations since 2000. These records indicated that Ashley's mental illness was mitigated by the use of medication including Amblify and Celexa, and that Ashley was using these medications while in the Tarrant County Jail, and that Ashley has requested that these medications be used while in jail. These records further indicated that around the time of his competency examination in June of 2011, Ashley reported that the medications were effective, without side effects, and that he was interacting normally with other inmates.

The records also indicated occasions where Ashley exaggerated or used his mental health problems to either obtain special treatment or avoid undesirable situations. In 2000, Ashley

___

[2] The same documents were later admitted at trial for record purposes only.

4

claimed he was suicidal in order to have his housing classification changed to a different cell block where inmates were allowed greater visitation rights. The record indicated that Ashley told jail officials that "he would say anything to get off 'I' row so he could get visits." In 2009, Ashley used his prior MHMR experience as a basis for requesting a single-occupant cell while incarcerated in the Tarrant County Jail. On October 7, 2010, Ashley admitted to his mental health treatment providers that he had been manipulating the jail's mental health system to obtain treatment that he believed to be preferential or favorable. On May 8, 2011, Ashley admitted to his treatment providers that he had been using his involvement with MHMR to manipulate his jail housing assignment.

The court denied Ashley's motion for another competency hearing. Following a request by the State, the trial court ruled that Ashley had voluntarily absented himself from the trial proceedings.

When the trial commenced the afternoon of August 30, 2011, Ashley was present in the courtroom to be arraigned. Ashley asked to speak and stated "[c]an I change the plea agreement to save the State some money?" The court explained that the plea had been previously rejected, which Ashley replied "[w]ell, I feel like killing myself," and repeated this several times. When the jury was brought in, Ashley kept repeating "I want to kill myself" and directed the same statement towards the jury. While Ashley continued making similar statements, his counsel entered not guilty pleas. Following that, Ashley was removed from the courtroom. During the course of the trial, Ashley continued to absent himself by refusing to put on clothes, and resisting attempts made by jailers to bring him to the courtroom. Before the jury was brought in on August 31, 2011, a *voir dire* examination of jail deputies was conducted and the court accepted

5

evidence regarding Ashley's actions and prior mental health history. At that time, Ashley's counsel asked again for an informal examination or in the alternative, a mistrial, which the court overruled.

The jury found Ashley guilty of the offense in count one. At the end of the punishment phase, the trial court found the habitual count to be "true" and assessed a thirty-year sentence. Ashley timely appealed.[3]

## DISCUSSION

Ashley argues that the trial court erred by failing to conduct an informal inquiry required by Article 46B of the Texas Code of Criminal Procedure where Ashley exhibited conduct that raised the issue of whether Ashley was competent to stand trial. Specifically, the issue is based on the trial court's failure to conduct a second hearing to determine competency. Ashley argues that the lack of a second inquiry led to his absence from the essential trial proceedings, in violation of the Fifth Amendment and Article 46B.004(c) of the Code of Criminal Procedure. He contends that his constitutional right to be competent to stand trial under the Fifth Amendment was violated and therefore constitutional error under TEX.R.APP.P. 44.2(a).

### Standards of review and applicable law

"A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." TEX.CODE CRIM.PROC.ANN. art. 46B.003(b)(West 2006). Either party or the trial court may suggest the defendant is incompetent to stand trial. TEX.CODE CRIM.PROC.ANN. art. 46B.004(a)(West Supp. 2012). Once such suggestion is made, if the trial judge has a "bona fide doubt" about the competency of the defendant, he "shall conduct an informal inquiry to determine if there is

---

[3] Ashley filed a Motion for New Trial, which was overruled by operation of law.

evidence that would support a finding of incompetence."[4] *Montoya v. State*, 291 S.W.3d 420, 425 (Tex.Crim.App. 2009); *McDaniel v. State*, 98 S.W.3d 704, 710 (Tex.Crim.App. 2003); *see also* TEX.CODE CRIM.PROC.ANN. art. 46B.004(c). "A bona fide doubt is 'a real doubt in the judge's mind as to the defendant's competency.'" *Fuller v. State*, 253 S.W.3d 220, 228 (Tex.Crim.App. 2008), *cert. denied*, 555 U.S. 1105, 129 S.Ct. 904, 173 L.Ed.2d 120 (2009); *Kostura v. State,* 292 S.W.3d 744, 746 (Tex.App.--Houston [14th Dist.] 2009, no pet.)(same). Evidence capable of creating a bona-fide doubt about a defendant's competency may come from the trial court's own observations, known facts, evidence presented, motions, affidavits, or any other claim or credible source. *Brown v. State*, 129 S.W.3d 762, 765 (Tex.App.--Houston [1st Dist.] 2004, no pet.); *Taylor v. State*, 948 S.W.2d 827, 831 (Tex.App.--San Antonio 1997, pet. ref'd); *Thompson v. State*, 915 S.W.2d 897, 902 (Tex.App.--Houston [1st Dist.] 1996, pet. ref'd), *citing Townsend v. State*, 427 S.W.2d 55, 63 (Tex.Crim.App. 1968). Evidence raising a bona fide doubt "need not be sufficient to support a finding of incompetence and is qualitatively different from such evidence." *Fuller*, 253 S.W.3d at 228. Evidence is usually sufficient to create a bona fide doubt if it shows "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant." *McDaniel*, 98 S.W.3d at 710; *Alcott v. State*, 51 S.W.3d 596, 599 n.10 (Tex.Crim.App. 2001) (noting same). An appellant's past history of mental illness and bizarre behavior does not mandate a competency inquiry absent evidence raising a bona fide doubt as to appellant's present ability to communicate or understand the proceedings. *Kostura,* 292 S.W.3d at 747; *c.f. Reeves v. State*, 46 S.W.3d 397, 400 (Tex.App.-Texarkana 2001, pet. dism'd) (evidence of drug addiction

---

[4] Effective Sept. 1, 2011, the Legislature amended Article 46B.004, disposing of the bona-fide-doubt standard for determining whether a trial court should conduct an informal inquiry. *See* Act of Sept. 1, 2011, 82d Leg., R.S., ch. 822, § 2, 2011 TEX.GEN.LAWS 1893 (to be codified at TEX.CODE CRIM.PROC. ANN. art. 46B.004(c–1)). Because the trial in this case commenced prior to the effective date of this amendment, September 1, 2011 it does not apply. Accordingly, we apply the law at the time the alleged procedural error occurred.

and suicide attempt did not reflect on defendant's ability to understand or participate in trial).

After the informal inquiry, if the trial court determines some evidence exists that would support a finding of incompetence, it shall order an examination to determine the defendant's competency. TEX.CODE CRIM.PROC.ANN. art. 46B.005(a). If the issue of the defendant's incompetency is raised before the trial on the merits begins, the court shall stay all other proceedings. *See id*. at Article 46B.004(d). However, if the issue of the defendant's incompetency is raised after the trial on the merits has begun, the court may determine the issue at any time before the sentenced is pronounced. *Id*. at Article 46B.005(d). The critical inquiry is whether the accused had the ability to consult with his attorney with a reasonable degree of rational understanding and had a rational as well as factual understanding of the proceedings against him. *Thompson*, 915 S.W.2d at 901-02. To justify a second competency hearing, defense counsel must offer new evidence of a change in defendant's mental condition since the first competency hearing and evaluation. *See Learning v. State*, 227 S.W.3d 245, 250 (Tex.App.--San Antonio 2007, no pet.); *Clark v. State*, 47 S.W.3d 211, 218 (Tex.App.--Beaumont 2001, no pet.).

A trial court's decision to conduct an incompetency trial is reviewed under an abuse-of-discretion standard. *See Moore v. State*, 999 S.W.2d 385, 393 (Tex.Crim.App. 1999). A trial court abuses its discretion if its decision is arbitrary or unreasonable. *Montoya,* 291 S.W.3d at 426. A reviewing court does not substitute its judgment for that of the trial court. *Id.* When reviewing the record to determine whether sufficient evidence raised a bona fide doubt about an appellant's competency to stand trial, we are mindful that we should "'afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor.'"

8

*Lasiter v. State*, 283 S.W.3d 909, 921 (Tex.App.--Beaumont 2009, pet. ref'd), *citing McDaniel*, 98 S.W.3d at 713 n.28.

**Application of law to facts**

Ashley argues that his unstable and erratic behavior established one of the factors that he was incompetent to stand trial, and that he did not have sufficient present ability to consult with his attorney with a reasonable degree of rational understanding. TEX.CODE CRIM.PROC.ANN. art. 46B.003(a). Ashley contends that he exhibited "truly bizarre behavior" and possessed a history of severe mental illness, and that because his condition was different than his condition at the time of the June 2011 competency examination, the court abused its discretion in failing to order an additional examination.

The fact that appellant made outbursts during trial is not evidence of an inability to communicate with counsel or to appreciate the proceedings against him. *See LaHood v. State*, 171 S.W.3d 613, 619 (Tex.App.--Houston [14th Dist.] 2005, pet. ref'd), *citing Moore*, 999 S.W.2d at 395. If such actions were enough to demonstrate incompetency, a defendant could easily avoid prosecution through immature behavior. *Id*.

The State directs this Court to *Clark v. State*, 47 S.W.3d 211 (Tex.App.--Beaumont 2011, no pet.). We find *Clark* analogous to the instant case. In *Clark*, the trial court held a competency hearing in July of 1999, but the appellant argued that the court abused its discretion in failing to conduct a second competency hearing in November of 1999. *Clark*, 47 S.W.3d at 215-16. The court of appeals noted that, while the appellant's behavior at the November 1999 pretrial hearing was "bizarre," no new evidence was presented indicating a change in the appellant's mental condition from the previous finding. *Id.* at 218, *citing Miles v. State*, 688 S.W.2d 219, 224

(Tex.App.--El Paso 1985, pet. ref'd)(holding that appellant must present some evidence of a subsequent change in competency or some new evidence in a manner analogous to newly discovered evidence in a motion for new trial to complain of a denial of a second competency hearing); *O'Neil v. State*, 642 S.W.2d 259, 262 (Tex.App.--Houston [14th Dist.] 1982, no pet.)(finding insufficient evidence to warrant another competency hearing or the empaneling of a jury on the issue after first competency hearing where appellant again raised the issue of competency but presented no new evidence). During the second hearing, the appellant repeatedly interrupted the trial court, the attorneys, and the witnesses with nonsensical remarks. *Clark*, 47 S.W.3d at 216. Testimony was also presented by a jailer that the appellant refused to get dressed and had to be dressed by the officers. *Id.* The court of appeals noted that, despite the bizarre behavior, there was no new evidence presented and "the trial judge could have determined [the appellant's] conduct was goal-oriented toward avoiding a trial." *Id*. at 218. The court of appeals found no abuse of discretion by the trial court in failing to conduct a second competency hearing. *Id.*

In the instant case, Ashley seems to have experienced his "bizarre" behavior when he was scheduled to go to court. The trial court concluded that Ashley was exaggerating his mental health issues at the time of trial. The trial court based its conclusions on its personal observations of Ashley's behavior; the court's previous off-the-record discussions with Ashley; and the trial court's view of the evidence before it. Just as importantly, no new evidence was presented by Ashley indicating a change in his mental condition. *Learning*, 227 S.W.3d at 250; *Clark*, 47 S.W.3d at 218. Viewing the evidence in the record in the light most favorable to the trial court's ruling, we find that the trial court's decision was not arbitrary or unreasonable. *Montoya*, 291

S.W.3d at 426. Ashley's first issue, as stated in his brief and presented as error for review, is overruled. However, in his argument on this issue, Ashley raises an additional point of error, which we now address.

### Constitutional arguments

In his brief, Ashley raises the issue that the lack of informal inquiry and his removal from the court violated his rights under the Confrontation Clause of the Sixth Amendment. Ashley argues that such a denial caused harm, requiring analysis under TEX.R.APP.P. 44.2(a) and (b). Apart from a general citation to the Sixth Amendment, Ashley does not direct this Court to any cites in the record supporting this argument, nor does he provide additional legal authority regarding it. Texas Rule of Appellate Procedure 38.1(i) states that an appellant's "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP.P. 38.1(i). Furthermore, as a general rule, an appellate court will not consider an issue raised by an appellant where the appellant fails to provide any legal argument to support his claim. *See Hamilton v. Williams*, 298 S.W.3d 334, 337 (Tex.App.--Fort Worth 2009, pet. denied). Accordingly, while this issue may well have been waived for inadequate briefing, *see* TEX.R.APP.P. 38.1(i); *Stanley Works v. Wichita Falls Independent School Dist.*, 366 S.W.3d 816, 829-30 (Tex.App.--El Paso 2012, pet. denied), *citing Ashley Furniture Industries Inc. ex rel. RBLS Inc. v. Law Office of David Pierce*, 311 S.W.3d 595, 597 (Tex.App.--El Paso 2010, no pet.)(noting same), in the interest of justice, we have considered it.

In all criminal prosecutions, the accused has a Sixth Amendment right to be confronted with the witnesses against him. *Gonzalez v. State*, 195 S.W.3d 114, 116 (Tex.Crim.App. 2006). However, equitable exceptions to the Confrontation Clause may apply, including the doctrine of

forfeiture by wrongdoing. *Id.*, *citing Crawford v. Washington*, 541 U.S. 36, 62, 124 S.Ct. 1354, 1370-71, 158 L.Ed.2d 177 (2004). After commencement of trial proceedings, a defendant may voluntarily absent himself from the trial without a violation of his Sixth Amendment right to be present during all phases of the trial. *See Taylor v. United States*, 414 U.S. 17, 18-19, 94 S.Ct. 194, 195, 38 L.Ed.2d 174 (1973)(per curiam); *Miller v. State*, 692 S.W.2d 88, 90 (Tex.Crim.App. 1985); *Tracy v. State*, 14 S.W.3d 820, 826 (Tex.App.--Dallas 2000, pet. ref'd). This is because the Supreme Court has recognized that a defendant's conduct in voluntarily absenting himself after his trial has commenced with him in attendance amounts to a forfeiture of his Sixth Amendment right to be present during the time he is absent. *See Taylor*, 414 U.S. at 18-19, 94 S.Ct. at 195; *Miller*, 692 S.W.2d at 90-91. Under Article 33.03 of the Texas Code of Criminal Procedure a defendant must be personally present at the trial until the jury has been selected, the point at which jeopardy attaches. *See* TEX.CODE CRIM.PROC.ANN. art. 33.03; *Miller*, 692 S.W.2d at 93; *Tracy*, 14 S.W.3d at 826.

Ashley argues because the trial court error was constitutional, any harm analysis must be conducted under Rule 44.2(a) of the appellate rules. *See* TEX.R.APP.P. 44.2(a). We disagree. As noted in *Tracy*, a violation of Article 33.03 may be harmless error under Rule 44.2(b) if the record does not show that the defendant was denied a fair and impartial jury. *Tracy*, 14 S.W.3d at 827.

In the instant case, Ashley fought with deputies on the morning of jury selection; refused to communicate with his trial attorney; had taken off his clothes and refused to leave his cell; and refused to talk to anybody. The trial court ruled that Ashley had voluntarily absented himself and directed the parties to continue with *voir dire*. Ashley's counsel objected to proceeding based on

12

a denial of Ashley's confrontation rights, which was overruled by the trial court. Ashley further absented himself after the jury was impaneled. Nothing in the record reflects that the jury selected was somehow not fair and impartial.

A defendant may voluntarily absent himself from the trial without a violation of his Sixth Amendment right to be present during all phases of the trial. *Taylor*, 414 U.S. at 19, 94 S.Ct. at 195-96; *Miller*, 692 S.W.2d at 90-91. However, the right to be present until the selection of the jury cannot be waived. *Tracy*, 14 S.W. 3d at 826. We hold, therefore, as the *Tracy* court did, that Ashley's absence during *voir dire* violated his statutory rights under Article 33.03. Because such an error is a statutory error, not a constitutional error, we may not reverse unless we determine the error affected a substantial right. TEX.R.APP.P. 44.2(b). A substantial right is affected when the error (1) had a "substantial and injurious" effect or influence in determining the jury's verdict or (2) leaves one in grave doubt whether it had such an effect. *Tracy*, 14 S.W.3d at 827. A substantial right is not affected and the error is harmless if, after reviewing the entire record, the appellate court determines the error did not influence, or had only a slight influence, on the trial's outcome. *Tracy*, 14 S.W.3d at 827. The court of criminal appeals has held no violation of substantial rights occurs during the *voir dire* unless the record shows the defendant was denied a fair and impartial jury. *See Ladd v. State*, 3 S.W.3d 547, 562 (Tex.Crim.App. 1999). Nothing in the record before us shows that the jury selected in Ashley's absence was unfair or impartial. *See Gray v. State*, 233 S.W.3d 295, 298-99 (Tex.Crim.App. 2007)(concluding that appellant's only substantial right is that jurors who serve be qualified); *Ladd v. State*, 3 S.W.3d at 562 (holding no violation of substantial rights occurred during *voir dire* where record did not show that defendant was denied fair and impartial trial). We conclude that the error of Ashley's absence during *voir*

13

*dire* did not affect a substantial right.  *See* TEX.R.APP.P. 44.2(b); *Tracy*, 14 S.W.3d at 827.

Hence, we disregard such error.

## CONCLUSION

Having overruled Ashley's sole point of error, the trial court is affirmed.


April 24, 2013

GUADALUPE RIVERA, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J. (Not Participating)

(Do Not Publish)