

# IN THE
# TENTH COURT OF APPEALS

### No. 10-19-00350-CR

**GABRIEL JANORD JONES,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 361st District Court**
**Brazos County, Texas**
**Trial Court No. 16-02933-CRF-361**

## MEMORANDUM OPINION

The jury convicted Gabriel Janord Jones, Appellant, of the first-degree felony offense of family violence aggravated assault while using a deadly weapon and causing serious bodily injury. *See* TEX. PENAL CODE ANN. § 22.02(b)(1). The jury then assessed Appellant's punishment at confinement for life, and it also assessed a fine of $10,000. The trial court sentenced Appellant accordingly. We affirm.

There is no challenge to the sufficiency of the evidence. Briefly, the evidence shows that Appellant and S.J. had been in a previous dating relationship and had lived together. They had a child together. Although they were not dating at the time of the offense, S.J. had recently shunned Appellant's efforts to renew the relationship.

During lunchtime on the date of the offense, Appellant came to S.J.'s home to visit their two-year-old son. He had borrowed a car to drive there. He had also borrowed a knife from a co-worker. When Appellant was leaving S.J.'s apartment, he cut S.J.'s throat; he stabbed her fourteen times. Appellant's young son tried to stop Appellant, but Appellant threw him across the room. Although the boy had blood on him, he was not injured; the blood was his mother's blood.

After Appellant assaulted S.J., a neighbor heard her screaming for help. She saw that S.J. had been stabbed and that her throat had been slashed. After Appellant left S.J.'s apartment, their young son went to a neighbor's home and led the neighbor back to S.J.'s apartment; S.J. was lying on the floor and was covered with blood. If S.J. had not received medical treatment, she would have died.

At the scene, police found the borrowed knife and part of Appellant's own severed finger. They also found Appellant's blood-stained work uniform shirt in a dumpster at his place of employment. There were blood stains on Appellant's boots. Officers also found blood stains on the interior and exterior of the car that Appellant had borrowed.

The jury heard testimony about the effects of domestic violence upon children in the family. They also heard testimony that Appellant was suicidal while in jail and that his behavior was abnormal. Appellant had previously been diagnosed with intermediate explosive behavior, possible bipolar disorder, and possible schizophrenia. He was given anti-psychotic medication while in jail.

In the first of two issues on appeal, Appellant contends that he "was denied his right to be present during the entire jury selection proceeding." Although that statement might leave the impression that Appellant was not present at all during jury selection, the complaint is that Appellant was not present for a portion of the jury selection process.

The record shows that Appellant was present for the trial court's entire qualification and general instruction process. Appellant was also present for the State's entire voir dire. Appellant was also present when his counsel began voir dire of the jury panel.

In Appellant's counsel's opening remarks to the jury panel, he introduced co-counsel and then introduced Appellant. When he introduced Appellant, trial counsel stated, "I'm proud to be representing [Appellant] on this matter." At this point the record contains this notation: "(Defendant left the courtroom)."

Appellant's counsel continued his voir dire examination of the jury panel in Appellant's absence. The focus of the examination at this point was upon the concept of reasonable doubt. After Appellant left the courtroom, trial counsel asked a total of five

questions. Those five questions were divided among three jurors. All the questions involved reasonable doubt.

After those five questions had been asked and answered, trial counsel made a general statement about reasonable doubt. After trial counsel's statement, one juror spoke up and said, "I think everybody should have their own opinion." At this point in the record, we find this notation: "(Defendant returned to courtroom)."

There are two different questions that we must answer to resolve Appellant's first issue on appeal. First, did the trial court violate Appellant's right to be present for trial under the Sixth Amendment to the United States Constitution and article I, section 10 of the Texas Constitution when it proceeded with voir dire during Appellant's brief absence?

For the following reasons, we answer that question, "No."

"After commencement of trial proceedings, a defendant may voluntarily absent himself from the trial without a violation of his Sixth Amendment right to be present during all phases of the trial." *Ashley v. State*, 404 S.W.3d 672, 680 (Tex. App.—El Paso 2013, no pet.) (citing *Taylor v. United States*, 414 U.S. 17, 18-19 (1973) (per curiam)). Although the trial court made no finding as to whether Appellant voluntarily absented himself from the courtroom, there is no requirement that it make such a finding. *Smith v. State*, No. 13-15-00442-CR, 2016 WL 3911239, at *3 (Tex. App.—Corpus Christi–Edinburg July 14, 2016, pet. ref'd) (mem. op., not designated for publication).

Nevertheless, when it continued the voir dire proceedings in Appellant's absence, the trial court impliedly found that Appellant voluntarily left the courtroom. *See id.* There is nothing in this record to indicate otherwise. Noteworthy is the absence of any mention in the briefing filed in this case in this court that Appellant's absence was anything other than voluntary.

Because Appellant voluntarily absented himself from the courtroom, there was no violation of his constitutional right to be present during the period of time that he was voluntarily absent.[1]

The second question that we must answer in connection with Appellant's first issue on appeal is: did the trial court err when it allowed voir dire to continue in Appellant's absence in violation of article 33.03 of the Texas Code of Criminal Procedure. This question is different from the constitutional one that we just discussed. That is so because article 33.03 affords more protection to a defendant than does the Sixth Amendment to the United States Constitution. *Morrison v. State*, 480 S.W.3d 647, 657 (Tex. App.—El Paso 2015, no pet.).

Article 33.03 provides:

> In all prosecutions for felonies, the defendant must be personally present at the trial, and he must likewise be present in all cases of misdemeanor when the punishment or

---

[1] Appellant also asserts a violation of article 1, section 10 of the Texas Constitution. However, he has not shown or argued that the Texas Constitution provides greater relief than the corresponding provision of the Constitution of the United States. Therefore, we base our analysis upon the federal constitutional provisions and precedent relevant to an analysis thereof. *See Ashley*, 404 S.W.3d at 681.

any part thereof is imprisonment in jail; provided, however, that in all cases, when the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion. When the record in the appellate court shows that the defendant was present at the commencement, or any portion of the trial, it shall be presumed in the absence of all evidence in the record to the contrary that he was present during the whole trial. Provided, however, that the presence of the defendant shall not be required at the hearing on the motion for new trial in any misdemeanor case.

TEX. CODE CRIM. PROC. ANN. art. 33.03.

Under article 33.03 a defendant's right to be present at trial is not waivable until after he has pleaded to the indictment or until, when a jury is to hear the case, the jury has been selected. *See Tracy v. State*, 14 S.W.3d 820, 826 (Tex. App.—Dallas 2000, pet. ref'd) (defendant must be personally present until jury selected). Because neither of those events had occurred here, it was error to proceed with voir dire in Appellant's absence.[2]

A violation of article 33.03 is subject to a harm analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure. Under that rule, we are to disregard errors, defects, irregularities, or variances that do not affect substantial rights. TEX. R. APP. P. 44.2(b). We ask whether Appellant was denied a fair and impartial jury. *See Ashley*, 404 S.W.3d at 680.

---

[2] In all fairness, we note that, in the trial court, Appellant did not voice any objection to the trial court's proceeding with voir dire in Appellant's absence.

The actual voir dire proceedings by the trial court, by the State, and by Appellant cover some 131 pages of the reporter's record. Appellant was present for the trial court's entire general instructions to the panel; he was present for the entire voir dire presentation by the State; he was present for all but a very short portion of his own counsel's voir dire.

During the trial court's discussion with the jury panel, the trial court addressed, among other things, the concept of reasonable doubt and the presumption of innocence. The State covered that same subject matter, among others. During Appellant's brief absence, his trial counsel covered those same matters and specifically addressed questions about reasonable doubt to three separate jurors.

The subject areas that Appellant voluntarily missed had been covered many times in many ways in his presence by the trial court, by the State's attorney, and by his own counsel. Appellant had ample opportunity to assist his counsel in the selection of his jury. There is nothing in the record before us to indicate that Appellant was denied a fair and impartial jury; his substantial rights were not affected. We overrule Appellant's first issue on appeal.

In his second issue on appeal, Appellant challenges the portion of the trial court's punishment charge that relates to the law of parole.

Article 37.07, section 4(a), of the Texas Code of Criminal Procedure provides the parameters for parole instructions in this case.  As applicable here, that section provides, in relevant part:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, the defendant will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a).[3]

In its charge on punishment, however, the trial court instructed the jury, in relevant part, that:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served *plus any good conduct time* equals one-half of the sentence imposed or 30 years, whichever is less.  [Emphasis added.]

Article 37.07, section 4(a), comports with Section 508.145(d)(2) of the Texas Government Code:

> An inmate described by Subdivision (1) is not eligible for release on parole until the inmate's actual calendar time served, without consideration of good conduct time, equals one-half of the sentence or 30 calendar years, whichever is less, but in no event is the inmate eligible for release on parole in less than two calendar years.

---

[3] In 2019, the legislature amended article 37.07, section 4(a).  The amendment became effective on September 1, 2019, and applies regardless of the date of the commission of the offense for which a defendant is on trial.  Therefore, the amended version of article 37.07, section 4(a), applies in this case.

TEX. GOV'T CODE ANN. § 508.145(d)(2).

The effect of the jury instruction as given was to instruct the jurors that good conduct time could be added to actual time served to arrive at parole eligibility. Because that was not correct, the trial court erred when it submitted the instruction. The State agrees that the instruction given by the trial court is erroneous.

We review a jury charge issue under a two-step process. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). We first determine whether an error exists. *Id.* If we find error, we analyze that error for harm. *Id.* If a defendant fails to object to the charge, as he did here, we will reverse only if the record shows "egregious harm." *Id.* at 743–44. Errors that result in egregious harm are those that affect "the very basis of the case," "deprive the accused of a 'valuable right,'" or "vitally affect [a] defensive theory." *Almanza v. State*, 686 S.W.2d 157, 172 (Tex. Crim. App. 1985) (op. on reh'g).

To determine whether harm was egregious under *Almanza*, we consider four factors on a case-by-case basis: (1) the jury charge, (2) the state of the evidence, (3) the parties' arguments, and (4) other relevant information in the record. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). Harm is egregious only if the balance of the factors tends to show that the error caused "actual rather than theoretical harm." *Id.* (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)).

Although the jury instruction about parole was erroneous, the trial court included the following instruction after the erroneous instruction:

It cannot accurately be predicted how the parole law might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of that law will depend on decisions made by parole authorities.

You may consider the existence of the parole law. You are not to consider the manner in which the parole law may be applied to this particular defendant.

We will presume that the jury followed the instructions that the trial court gave it in the charge. *Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002). The "curative" instruction given by the trial court would not cure the error in the parole instruction, but it would prevent harm to Appellant in that it would caution the jury that it could not consider parole and good conduct time in their assessment of punishment. *Newman v. State*, 49 S.W.3d 577, 581 (Tex. App.—Beaumont 2001, pet. ref'd). Further, there is nothing in the record to indicate that the jury was confused by the court's charge.

The evidence in this case was gruesome and the injuries were life-threatening; in the absence of medical treatment, S.J. would have died. Appellant stabbed S.J. fourteen times and cut her throat. The brutal assault occurred in the presence of Appellant's two-year-old son. Appellant threw his young son across the room as the boy was attempting to protect his mother from his father, Appellant.

Additionally, the evidence shows that while Appellant was in jail awaiting trial in this case, he threatened to kill his then girlfriend if she were unfaithful to him while he was in jail. Appellant had been assaultive during their three-year relationship.

As we have noted, Appellant did not contest the sufficiency of the evidence that we have briefly outlined.

The State mentioned parole only once during its jury argument. Instead, the focus of the State's argument was on the nature and circumstances of the assault and the punishment phase evidence.

On balance, when we consider all the relevant factors, we cannot say that Appellant suffered egregious harm because of the erroneous jury instruction. We overrule Appellant's second issue on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT
Justice


Before Chief Justice Gray,
    Justice Johnson, and
    Justice Wright[4]
Affirmed
Opinion delivered and filed September 15, 2021
Do not publish
[CRPM]

---

[4] The Honorable Jim R. Wright, Senior Chief Justice (Retired) of the Eleventh Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.