# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

**NO. 03-23-00492-CV**

---

**In the Matter of N. M. - P.**

---

**FROM THE COUNTY COURT OF HAYS COUNTY**
**NO. 5524, THE HONORABLE CHRISTOPHER P. JOHNSON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

N.M.-P. (Nathan) pleaded true to capital murder and received a determinate sentence of thirty-five years' commitment. By two issues, Nathan argues that the trial court abused its discretion by later transferring him from the Texas Juvenile Justice Department (TJJD) to the Texas Department of Criminal Justice (TDCJ) because: (1) the trial court failed to conduct a competency inquiry, in violation of Article 46B of the Code of Criminal Procedure and Section 55.04 of the Family Code; and (2) Nathan's intellectual disability was not appropriately accommodated by TJJD and may have contributed to his lack of rehabilitation. We affirm.

## I. BACKGROUND

In January of 2021, then-sixteen-year-old Nathan shot and killed Giancarlo Perez during a robbery. In March of 2021, the State filed its original petition alleging that Nathan committed the offense of capital murder and seeking a discretionary transfer to criminal court. On May 16, 2022, the State filed an amended petition alleging that Nathan committed delinquent conduct—as relevant here, capital murder—and requested that the juvenile court order a

disposition under the Family Code's determinate sentencing scheme.  *See, e.g.*, Tex. Fam. Code § 53.045.  On May 18, 2022, as part of a plea agreement, Nathan judicially admitted and confessed to committing the offense of capital murder, and the trial court imposed a determinate sentence of thirty-five years' commitment to TJJD with a possible transfer to criminal court.

In July of 2023, with Nathan's nineteenth birthday approaching, the juvenile court held a release-or-transfer hearing to determine whether Nathan should be conditionally released from custody or transferred to the TDCJ to serve the remainder of the thirty-five-year disposition.  At the conclusion of the hearing, the juvenile court ordered Nathan transferred to TDCJ to serve the remainder of his disposition.  This appeal followed.

## II.    NATHAN'S COMPETENCY

By his first issue, Nathan contends that the trial court violated his due process rights by failing to conduct an inquiry into his competency during the release-or-transfer hearing.

### A.    Standard of Review & Applicable Law

Competence to stand trial is a rudimentary requirement of due process.  *Cooper v. Oklahoma*, 517 U.S. 348, 354–55 (1996) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)).  To satisfy due process standards, the Legislature codified substantive and procedural frameworks to ensure the competency of both juveniles and adults accused of criminal conduct.  *See, e.g.*, Tex. Code Crim. Proc. ch. 46B; Tex. Fam. Code ch. 55.  Under the Family Code, a child "who as a result of mental illness or an intellectual disability lacks capacity to understand the proceedings in juvenile court or to assist in the child's own defense is unfit to proceed and shall not be subjected to discretionary transfer to criminal court, adjudication, disposition, or modification of disposition as long as such incapacity endures."  Tex. Fam. Code

2

§ 55.31(a). Similarly, under the Code of Criminal Procedure, if a suggestion of the defendant's incompetency is raised, the court must "determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." Tex. Code Crim. Proc. art. 46B.004(c). If the court determines that there is some evidence of incompetency, it must stay the proceedings and conduct a formal competency inquiry. *Id.* art. 46B.004(d).

We review a trial court's compliance with these frameworks for an abuse of discretion. *See In re H.C.*, 562 S.W.3d 30, 42 n.9 (Tex. App.—Texarkana 2018, no pet.) (citing *In re K.A.H.*, 700 S.W.2d 782, 784 (Tex. App.—Fort Worth 1985, no writ)); *Kostura v. State*, 292 S.W.3d 744, 746 (Tex. App.—Houston [14th Dist.] 2009, no pet.). A court "abuses its discretion when it acts arbitrarily or unreasonably or without reference to guiding rules or principles." *In re H.C.*, 562 S.W.3d at 45.

### B.        Analysis

"After a child with a determinate sentence reaches the age of sixteen, but before reaching the age of nineteen, the TJJD may request an order approving the transfer of the child to the TDCJ if the sentence has not been completed and the child poses a continuing risk to the community's welfare." *J.A.F. v. State*, No. 14-23-00922-CV, 2025 WL 793579, at *6 (Tex. App.—Houston [14th Dist.] Mar. 13, 2025, no pet.) (mem. op.) (citing Tex. Hum. Res. Code § 244.014). "On receipt of a referral from TJJD, the trial court is required to hold a hearing on the matter." *In re D.E.P.*, No. 03-21-00413-CV, 2022 WL 3638231, at *2 (Tex. App.—Austin Aug. 24, 2022, no pet.) (mem. op.) (citing Tex. Fam. Code § 54.11(a)).

3

In these release-or-transfer hearings, like the one that occurred below, the trial court acts in a similar fashion as a parole board, considering whether the juvenile, the victim, and society-at-large would be better served by releasing the juvenile on adult parole or transferring him to TDCJ. *See* Tex. Fam. Code § 54.11(k). Because the adjudication of delinquent conduct and disposition have already occurred by this stage, the intermediate courts of appeals have routinely held that not all of the customary due process protections normally afforded apply. *See, e.g.*, *In re S.M.*, 207 S.W.3d 421, 425 (Tex. App.—Fort Worth 2006, pet. denied) ("[T]he hearing does not need to meet the same stringent due process requirements as a trial in which a person's guilt is decided."); *In re C.D.T.*, 98 S.W.3d 280, 282 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ("It is not part of the guilt/innocence determination, consequently it need not meet the extensive due process requirements of an actual trial."); *In re D.S.*, 921 S.W.2d 383, 387 (Tex. App.—Corpus Christi–Edinburg 1996, writ dism'd w.o.j.) ("[T]he release or transfer hearing is a 'second chance hearing' after appellant had already been sentenced to a determinate number of years. It is not part of the guilt/innocence determination, consequently it need not meet the extensive due process requirements of an actual trial."); *see also Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."); *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional right or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.").

Nevertheless, one of our sister courts has concluded that a juvenile offender must be competent for a release-or-transfer hearing to proceed. *In re N.S.*, No. 10-01-319-CV, 2004 WL 254215, at *6 (Tex. App.—Waco Feb. 11, 2004, pet. denied) (mem. op.) ("[W]e conclude that due process demands that a juvenile offender be competent before being subjected

4

to a transfer hearing under section 54.11."). Therefore, we will assume without deciding that due process required Nathan to be competent to be subjected to a release-or-transfer hearing.

As discussed above, there are two statutory schemes that provide a framework for competency determinations, that of the Family Code and that of the Code of Criminal Procedure. The State and Nathan dispute which applies. Nathan contends that both the Family Code's and the Code of Criminal Procedure's provisions concerning competency apply, while the State contends that solely the Family Code applies. The distinction between the two is when the trial court is obligated to conduct a competency inquiry. Under the Code of Criminal Procedure, if evidence suggesting the defendant may be incompetent comes to the trial court's attention from any source, including the court's own observations, it must conduct an informal inquiry into the defendant's competency to stand trial. Tex. Code Crim. Proc. art. 46B.004(b), (c). But under the Family Code, the trial court only needs to determine whether a juvenile may be unfit to proceed "[o]n a motion by a party." Tex. Fam. Code § 55.31(b); *see In re H.C.*, 562 S.W.3d at 41 ("[T]he Family Code, unlike the Code of Criminal Procedure, does not require the juvenile court to sua sponte order an evaluation to determine whether a child is fit to proceed with a modification hearing when it has evidence before it suggesting that the child may be unfit to proceed.").

We need not decide which framework, if any, applies in these circumstances, as we conclude that even under the more stringent requirements of the Code of Criminal Procedure, the trial court did not err by failing to conduct an inquiry into Nathan's competency during the release-or-transfer proceedings.

On May 12, 2021, or thereabouts,[1] Nathan's trial attorney filed a motion suggesting that Nathan "lack[ed] the capacity to understand the proceedings in . . . juvenile court or to assist in the child's own defense." The motion requested that the trial court appoint one or more experts to examine Nathan pursuant to Article 46B of the Code of Criminal Procedure and the Family Code to ensure his competency to proceed. Nathan's attorney signed an affidavit averring that he was "having great difficulty obtaining [Nathan's] assistance in understanding the charges and the circumstances to the extent that he could sufficiently assist . . . in his own defense."

The suggestion of incompetency was sworn to by Nathan's trial counsel in May of 2021, predating Nathan's plea and stipulation of evidence by one year. Nathan represents that, despite this motion, "no examination [was] conducted to determine competency."

However, at the release-or-transfer hearing, Nathan's TJJD file was admitted into evidence. Included in this file were notes from Kara Oldham, a juvenile probation officer, detailing her interactions with Nathan throughout his stay at the Hays County Juvenile Detention Center. A May 21, 2021 note reflects that the trial court's assistant court administrator sent an email to Oldham, notifying her that "Dr. Michael Roman" would be conducting the "fitness to

---

[1] Appellate counsel filed a motion to supplement the record, attached to which was a copy of the motion discussed above. The attached motion was not file-stamped, but the associated certificate of service indicates that trial counsel served the State with it on May 12, 2021.

Appellate counsel represents that the Hays County Clerk's Office routinely does not accept "motions . . . filed in juvenile matters" and instead, litigants must file their motions directly with the trial court responsible for hearing the matter. Because of this, appellate counsel explained that the motion with which he sought to supplement the record came directly from Nathan's trial counsel. The State filed a response, indicating that it did not contest the relief sought in Nathan's motion to supplement the record. We therefore permitted the record to be supplemented but cannot be certain as to when this motion was filed.

proceed evaluation." On June 26, 2021, Oldham noted that "Dr. Roman Michael [sic] met with N[athan] to perform the competency evaluation." However, a July 26, 2021 note indicates "that the court is in the process of finding another doctor to do the exam." A note dated August 16, 2021, states that Oldham explained to Nathan that a second doctor would be performing an evaluation and "the Judges [sic] office will be reaching out to the doctor as well." Finally, Oldham's notes indicate that Dr. Ann Marie Hernandez, a licensed clinical psychologist, met with Nathan in October and November of 2021 to conduct the competency evaluation and that Dr. Hernandez tendered her report to the court in early 2022.

Although the competency evaluation itself is not in evidence, Nathan's file discusses the results of the evaluation, including that Dr. Hernandez ultimately found that Nathan's "intellectual functioning fell into the Below Average range and his intellectual impairment is mild." She also diagnosed Nathan with "Cannabis Use Disorder, Moderate, Borderline Intellectual Functioning, and Depressive Disorder, Unspecified." After the report was provided to the trial court, the underlying proceedings continued. *Cf.* Tex. Fam. Code § 55.36(a) ("If a report submitted under Section 55.35(b) states that a child is fit to proceed, the juvenile court shall find that the child is fit to proceed unless the child's attorney objects" within a certain timeframe). In the stipulation of evidence entered after the fitness to proceed evaluation concluded, Nathan's attorney represented that Nathan "fully" understood his rights and "waiv[ed] said rights freely, voluntarily and intelligently." The trial court approved the stipulation.

Despite Nathan's contention to the contrary, we conclude that the trial court did conduct a competency inquiry to assess his fitness to proceed prior to the initiation of the release-or-transfer proceedings. To the extent that there are gaps in the record, "[t]he burden is on the

7

appellant to see that a sufficient record is presented to show error requiring reversal." *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) (per curiam); *see In re C.J.*, 689 S.W.3d 417, 425 (Tex. App.—Dallas 2024, no pet.). And "[w]hen confronted with an incomplete record, we presume the omitted portions are relevant to the appeal and the evidence contained within the omitted portions of the record support the trial court's judgment." *Hizar v. Heflin*, 672 S.W.3d 774, 788 (Tex. App.—Dallas 2023, pet. denied). Therefore, we must presume that Dr. Hernandez's competency evaluation supports a finding of competency. *See id.*; *see also Halliburton v. State*, Nos. 12-04-00351-CR, 12-05-0013-CR, 2006 WL 859751, at *2 (Tex. App.—Tyler Mar. 31, 2006, no pet.) (mem. op., not designated for publication). ("[W]e presume that the missing portions of the records contain evidence to support the trial court's failure to hold trials to determine Appellant's competency to stand trial.").

In addition to his attorney's May 2021 suggestion of incompetency, Nathan points to other evidence in the record indicating that he has a below-average IQ and an intellectual disability to suggest that the trial court erred by not halting the release-or-transfer hearing to conduct another competency inquiry. But to be entitled to a second competency inquiry, there must be some new evidence indicating a change in the defendant's mental state. *Ashley v. State*, 404 S.W.3d 672, 678 (Tex. App.—El Paso 2013, no pet.); *see also Hageman v. State*, No. 03-13-00549-CR, 2015 WL 3545761, at *3 (Tex. App.—Austin June 5, 2015, no pet.) (mem. op., not designated for publication) ("Because Hageman was formally examined and found competent, we will conclude that the trial court abused its discretion by failing to conduct an additional competency inquiry only if there was evidence that Hageman's condition had deteriorated after the trial court's initial finding of competency.").

Based on the results of Dr. Hernandez's evaluation that had already been presented to the trial court, the fact that Nathan had a below-average IQ and intellectual disability would not be new evidence indicating a change in Nathan's mental state. The other information contained in Nathan's file indicates that there had been no deterioration in his competency since the initial evaluation. In September 2022, Dr. William Maddox conducted a psychological evaluation of Nathan on behalf of TJJD "to establish current psychological functioning, and to identify any specialized treatment needs warranting consideration in placement planning." The resulting report indicates that Nathan's "thought process seemed logical and goal-directed, with no evidence of gross disorganization, loose associations, or any of the other characteristics that are associated with psychotic disorders or severe forms of mood disorder." In terms of furthering his educational goals, the report detailed that Nathan "should be able to complete the general program when given time to complete tasks especially in reading and mathematics, and given specific directions." The only specialized treatment recommended was "participating in trauma counseling to address his offense and the resulting death of his victim." Similarly, a March 29, 2023 psychological evaluation completed by Virginia Gresham, a licensed marriage and family therapist, also indicated that Nathan's "thought processes appeared linear and his thinking was logical."

Under the Code of Criminal Procedure, the relevant questions for determining an individual's competency are whether that individual has a "sufficient *present* ability to consult with the person's lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against the person." Tex. Code Crim. Proc. art. 46B.003(a) (emphasis added). And under the Family Code, the trial court must determine whether probable cause exists to believe that the juvenile "lacks capacity to understand the

9

proceedings in juvenile court or to assist in the child's own defense." Tex. Fam. Code § 55.31(a), (c). "Evidence relevant to these issues includes whether a defendant can: (1) understand the charges against him and the potential consequences of the pending criminal proceedings; (2) disclose to counsel pertinent facts, events, and states of mind; (3) engage in a reasoned choice of legal strategies and options; (4) understand the adversarial nature of criminal proceedings; (5) exhibit appropriate courtroom behavior; and (6) testify." *Bluntson v. State*, No. AP-77,067, 2025 WL 1322702, at *7 (Tex. Crim. App. May 7, 2025) (first citing *Morris v. State*, 301 S.W.3d 281, 286 (Tex. Crim. App. 2009); and then citing Tex. Code Crim. Proc. art. 46B.024).

Nathan's TJJD file indicates that he experienced symptoms of depression and anxiety surrounding the July 2023 hearing, and that he was having difficulty understanding the treatment options available to him through TJJD. However, there is no evidence in the record indicating that, at or near the time of the release-or-transfer hearing, Nathan was struggling to comprehend the nature of the proceedings against him or assist in his own defense. *See* Tex. Code Crim. Proc. art. 46B.003(a); Tex. Fam. Code § 55.31; *In re C.D.M.*, No. 06-21-00118-CV, 2022 WL 4374982, at *3 (Tex. App.—Texarkana Sep. 22, 2022, pet. denied) (mem. op.) ("Significantly, there was no testimony and no indication in the psychological evaluation report that C.D.M.'s mental health issues or his mildly impaired intellectual functioning impaired his capacity to understand the juvenile proceedings or to assist in his own defense."). Accordingly, we conclude that the trial court did not abuse its discretion by failing to conduct an additional competency inquiry during the release-or-transfer proceedings. We overrule Nathan's first issue.

## III.  DECISION TO TRANSFER

By his second issue, Nathan contends that the trial court abused its discretion in transferring him to TDCJ because TJJD did not sufficiently accommodate his intellectual disability and hindered his ability to successfully rehabilitate.

**A.        Standard of Review & Applicable Law**

Once TJJD refers a person to "the juvenile court for a transfer, the juvenile court is required to hold a hearing to determine whether to transfer the person to the custody of TDCJ for the completion of the person's sentence." *In re J.J.*, 276 S.W.3d 171, 178 (Tex. App.—Austin 2008, pet. denied) (citing Tex. Fam. Code § 54.11(a), (i)).

In making this determination, the court considers a number of factors, including:

(i)      the experiences and character of the person before and after commitment to TJJD;

(ii)     the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed;

(iii)    the abilities of the person to contribute to society;

(iv)     the protection of the victim of the offense or any member of the victim's family;

(v)      the recommendations of TJJD and the prosecuting attorney;

(vi)     the best interests of the person; and

(vii)    any other relevant factor.

Tex. Fam. Code § 54.11(k).  "The juvenile court is not required to consider all of the factors, and the court is expressly allowed to consider unlisted but relevant factors." *In re J.J.*, 276 S.W.3d at 178.

We review the trial court's decision to transfer a juvenile from TJJD to TDCJ for an abuse of discretion. *Id.* "If 'some evidence' exists to support the juvenile court's decision, there is no abuse of discretion." *Id.* (first citing *In re F.D.*, 245 S.W.3d 110, 113 (Tex. App.—Dallas 2008, no pet.); then citing *In re D.L.*, 198 S.W.3d 228, 229 (Tex. App.—San Antonio 2006, pet. denied); and then citing *In re R.G.*, 994 S.W.2d 309, 312 (Tex. App.—Houston [1st Dist.] 1999, pet. denied)).

**B.**     **Analysis**

Nathan attributes his failure to make substantial progress towards rehabilitation on the lack of accommodations provided to him by TJJD. And, indeed, several witnesses testified that Nathan could have made more progress at TJJD if certain accommodations were provided. But in its letter recommending the transfer that was admitted into evidence, TJJD opined that Nathan

> has not completed any of his specialized treatments due to his negative, disruptive, and assaultive behaviors. He has been provided numerous opportunities by TJJD staff at various facilities to espouse change. He has incurred multiple major rule violations, with the majority of them being aggressive in nature, resulting in a placement in a violence continuum program (RDP). Given his minimal progress, his impulsive and disruptive behaviors, after receiving multiple interventions, and threatening behaviors, he has provided little evidence he will have a favorable prognosis in regards to meeting parole expectations. N[athan]'s behavior and refusal to comply with a reasonable request suggest that he is a danger to the community; therefore, a recommendation for transfer to TDCJ[] is recommended for the protection of the community.

The trial judge is the sole determiner of credibility and may resolve conflicts in the evidence as it sees fit. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). "Reviewing courts cannot impose their own opinions to the contrary." *Id.*

12

In total, during his time with TJJD, Nathan had seventeen incidents reported on his record. Six of these incidents resulted in Nathan being admitted to a special program "for youth that are . . . so disruptive that it causes problems with the staff." As recently as May 31, 2023, less than two months before the release-or-transfer hearing, Nathan was written up for "touching and fondling" another child.

Even if TJJD could have and should have done a better job of accommodating Nathan's intellectual disability, on this record, we cannot say that the trial court abused its discretion by transferring Nathan to TDCJ. *See In re J.J.*, 276 S.W.3d at 180 (undisputed evidence that juvenile "engaged in violent, assaultive behavior on multiple occasions" weighed in favor of trial court's decision to transfer juvenile to TDCJ). Accordingly, we overrule Nathan's second issue.

## IV.    CONCLUSION

We affirm the trial court's judgment.

_____

Maggie Ellis, Justice

Before Justices Theofanis, Crump, and Ellis

Affirmed

Filed:   July 30, 2025

13