**Billy Joel TRACY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 05–98–01618–CR to 05–98–01620–CR.**

Court of Appeals of Texas, Dallas.

March 22, 2000.

Ted Sansom, Rockwall, for Appellant.

Galen Ray Sumrow, Crim. Dist. Atty., Craig Stoddart, Rick Calvert, Asst. Crim. Dist. Attys., Rockwall, for State.

Before Justices KINKEADE, JAMES, and FITZGERALD.

## OPINION

Opinion By Justice JAMES.

Billy Joel Tracy appeals his convictions for assault, burglary of a habitation, and aggravated assault. After finding appellant guilty, the jury found the punishment-enhancement allegation true and assessed appellant's punishment at twenty years' imprisonment for assault, life imprisonment for burglary of a habitation and aggravated assault, and a $10,000 fine in each case. Appellant brings five points of error contending: (1) he was denied a fair trial by the procedures used to restrain him and the jury's knowledge of those restraints; (2) the trial court erred in admitting a letter appellant wrote during the trial; (3) the trial court erred in conducting voir dire in appellant's absence; (4) the trial court erred in limiting appellant's cross-examination of a State's witness; and (5) the jury charge in each case at the punishment stage was misleading and prejudicial. We overrule the points of error and affirm the trial court's judgments.

## RESTRAINING A DEFENDANT

■ In his first point of error, appellant contends he was denied a fair trial by the procedures used to restrain him and by the jury's knowledge of his restraint. It is within the discretion of the trial court whether to shackle a defendant. *See Cooks v. State,* 844 S.W.2d 697, 722 (Tex. Crim.App.1992), *cert. denied,* 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993); *Long v. State,* 823 S.W.2d 259, 282 (Tex. Crim.App.1991), *cert. denied,* 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992). Shackling is permissible only in exceptional circumstances, and the record must reflect the particular circumstances justifying the use of restraints. The trial court's decision to restrain a defendant is reviewed for abuse of discretion. *See Cooks,* 844 S.W.2d at 722; *Long,* 823 S.W.2d at 282. However, an abuse of discretion in ordering the defendant restrained is harmless if the jurors did not

see the restraints. *See Cooks,* 844 S.W.2d at 723; *Long,* 823 S.W.2d at 283.

■ Outside the presence of the jury, the Rockwall County Sheriff, Jacques Kiere, testified appellant had been in the county jail for about three months preceding his trial. During that time, appellant had "proven to be rebellious to any suggestions by the jailors" and was involved in assaults on the guards, including throwing a cup of feces and urine on a guard. Appellant had been removed from the general inmate population because his contacts with inmates and guards generally resulted in confrontations. Kiere considered appellant a high escape risk due to the violence with which he resisted arrest for these offenses, which "indicate[d] a willingness to push his attempt to escape to the extreme, including even killing himself if that's what it takes." According to Kiere, jail personnel found a two-inch screw hidden on appellant that he had removed from the bus used to transport him to the courthouse. Appellant had written a letter to a friend telling him to help him escape and they would rob a bank. Appellant had stated "numerous times that he had nothing to lose and would do whatever it took to escape." Kiere urged the court "to take every available measure to make sure that [appellant] does not harm himself or someone else."

Throughout the trial, appellant was restrained by a chain from his ankle that was locked into the floor, a leg brace that kept his leg straight preventing him from running, and a belt that would send an electrical charge through his body if he tried to flee. The counsel tables had wooden panels extending to the floor, preventing the jurors from seeing the ankle chain. The leg brace and electrical belt were concealed beneath appellant's clothing. Because appellant could not fully stand due to the leg brace, the trial court instructed the attorneys not to fully stand when the judge and jury entered and left the courtroom. Appellant was not moved except

when the jurors were out of the courtroom. Appellant did not testify.

At the end of the second day of the trial, appellant's attorney told the court that one of the jurors "might be able to see [appellant's] feet as he sits here. And, in fact, if you sit in that seat, you can see that there is [sic] some metal trappings down there around his feet." The trial court noted that appellant's attorney was "in that position beside [appellant]." The trial court made further adjustments to the positioning of the tables.

During the punishment stage of the trial, the court admitted into evidence State's Exhibit 49, a letter in which appellant described the restraints he would be wearing during the trial. Appellant did not object to the letter on the ground it revealed his restraints to the jury.

After the parties closed the evidentiary portion of the punishment stage, appellant told his attorney something that caused her to alert the trial court that appellant posed an additional risk. The trial court noted appellant had become more agitated during the trial. The court, with appellant's attorney's approval, ordered that appellant be handcuffed during the remaining portion of the trial. Appellant was given a piece of cloth to hide the handcuffs from the jury. The trial court then stated:

> The Court: What we're going to do, I do want the record to reflect and all counsel to affirm that at this point in the trial, while all of the evidence has been presented, there has been no visible restraint on the Defendant. Is that correct, counsel?
>
> Defense Counsel: That is correct.
>
> Prosecutor: That is correct, your Honor.
>
> The Court: And that while there's been no physical [sic] restraint, the only indication of restraint has been his letter that he wrote and was admitted into evidence.

■ The record contains no evidence that any of the jurors were actually aware of the restraints appellant wore. Even though the letter introduced at the punishment stage described the restraints appellant wore, the record contains no evidence that any of the jurors could see those restraints or had any reason to believe appellant was restrained. The trial court was thorough in preparing the courtroom and the lawyers so the restraints would not be visible to the jurors. Although appellant's attorney objected that one of the jurors might be able to see appellant's chained foot, the record contains no evidence that any of the jurors actually saw the restraints. At the end of the evidentiary portion of the punishment stage, the trial court found, with the approval of appellant's attorney, "there has been no visible restraint on the Defendant."

Appellant cites two cases in support of his argument that the restraints used during his trial were not permissible. In *Ex parte Slaton,* 484 S.W.2d 102 (Tex.Crim. App.1972), the court of criminal appeals held the defendant was deprived of due process because he was tried in jail clothes. *See id.* at 105. In *Penn v. State,* 628 S.W.2d 179 (Tex.App.-Corpus Christi 1982, pet. ref'd), the court of appeals held the restraints used on the defendant deprived *him of* due process because they were visible to the jurors. *See id.* at 181. In this case, the restraints were not visible to the jurors, and the record contains no evidence that appellant was tried in jail clothes. Therefore, neither case appellant cites is applicable to these facts.

After reviewing all the evidence before the trial court, we conclude the trial court did not err in having appellant physically restrained during the trial. The Sheriff described appellant's violent tendencies towards the guards and his fellow inmates as well as appellant's stated objective of escaping. Considering this evidence, we cannot conclude the trial court abused its discretion in ordering appellant be physically restrained during the trial. However, if the trial court did abuse its discretion, any error was harmless because the record demonstrates that the jurors did

not see the restraints. We overrule appellant's first point of error.

## APPELLANT'S LETTER

■ In his second point of error, appellant contends the trial court erred in admitting State's Exhibit 49 at the punishment stage. Exhibit 49 was a letter appellant wrote to a friend named "Scarecrow" two days before his trial began. The letter contains appellant's description of throwing feces and urine at a guard, an assault of another inmate, threats to kill a guard, threats to blind a guard with a pencil, comments favoring drug and alcohol use, and numerous sexual references to the guards. The letter is written in a vulgar tone. The letter includes a cover page addressed to the guards informing them that the letter contains material "that will really make me look *bad* at my trial." In the body of the letter, appellant explains that the guards intercept and read his mail. Appellant addresses the guards directly in the letter and suggests they use the letter against him at his trial. The exhibit was offered to show appellant's admission of committing bad acts in jail and to show he is a continuing threat to society.

Appellant argues the letter was inadmissible because he was not given adequate pretrial notice of the State's intent to introduce it into evidence as required by rule of evidence 404(b). *See* Tex.Code Crim. Proc. Ann. art. 37.07, § 3(g) (Vernon Supp. 2000); Tex.R. Evid. 404(b). Appellant timely requested discovery of the letter; however, the State was unaware of the letter's existence until the day before the prosecutor delivered a copy of the letter to appellant's attorney. Appellant did not object to the lack of notice at trial; accordingly, no error is preserved for appellate review. *See* Tex.R.App. P. 33.1(a); Tex.R. Evid. 103(a)(1).

■ Article 37.07, section 3(a) permits the trial court to admit any matter the trial court deems relevant to sentencing, including evidence of other crimes or bad acts.[1] *See* Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp.2000); *Mitchell v. State,* 931 S.W.2d 950, 952 (Tex.Crim. App.1996); *Anderson v. State,* 901 S.W.2d 946, 950 (Tex.Crim.App.1995). Appellant argues the letter was inadmissible because its probative value was substantially outweighed by the danger of unfair prejudice. *See* Tex.R. Evid. 403. Appellant asserts in his brief, "The references in the letter to female probation officers, racial bias, homosexual acts, sodomy, etc. could not have failed to produce extreme and unfair prejudice against Appellant in the minds of the jurors" and caused them to decide appellant's punishment on the basis of emotion. State's Exhibit 49 contains no references to female probation officers or racial bias.

The letter contains substantial evidence of probative value, including appellant's gloating admissions of throwing feces and urine on a guard and seriously injuring another inmate. The letter also sets out appellant's intention to kill any of the guards who "make mistakes" and his intention to blind a particular guard. The letter demonstrates appellant intended that it be read by the guards and his knowledge that it would be used at his trial. It demonstrates his contempt for authority and his refusal to conform to any of the rules of peaceful society. Although the letter was prejudicial, we cannot conclude the prejudice was unfair. *Cf. Green v. State,* 934 S.W.2d 92, 104 (Tex.Crim. App.1996) (letter written by the defendant describing himself as a "trigga happy" was not unfairly prejudicial), *cert. denied,* 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997). We hold the trial court did not abuse its discretion in overruling appel-

---

1. This provision is subject to the requirement that the extraneous crimes and bad acts be proven beyond a reasonable doubt. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp.2000). However, appellant did not assert at trial and does not contend on appeal that the extraneous crimes and bad acts were not proven beyond a reasonable doubt. Accordingly, we need not, and do not, reach that issue.

lant's objection to the admission of State's Exhibit 49. We overrule appellant's second point of error.

## VOIR DIRE IN APPELLANT'S ABSENCE

In his third point of error, appellant contends the trial court erred in conducting part of the voir dire in appellant's absence. Before the voir dire began, appellant's attorney informed the trial court that appellant would need to leave during the voir dire to meet with a doctor. Part way through the State's voir dire of the venire, the trial court told the prospective jurors, "[W]e are having to excuse Mr. Tracy this afternoon in that he had a previously scheduled activity that we've all agreed would be important for him; and, therefore, he will not be with us the rest of the afternoon. This is not to reflect on him in any way. It's something that we've all agreed that he would take care of this afternoon." The voir dire continued in his absence. Appellant did not return to court until the next day, which was after the jury had been selected and sworn.

Appellant was present when the State questioned the panel concerning whether any prospective juror knew the lawyers or witnesses in the case, and he was present for the State's discussion of the elements of aggravated assault and assault on a public servant. Appellant was not present for the State's discussion of burglary of a habitation, voluntary intoxication, media coverage of the events, the burden of proof, the range of punishment, and whether the prospective jurors, their families, or friends had been victims of criminal offenses. Appellant was absent for the entirety of his attorney's voir dire of the venire, including her questioning concerning the burden of proof, judging the credibility of witnesses, whether any of the

prospective jurors distrusted psychiatrists or psychologists, the range of punishment, the prospective jurors' views concerning spanking children, and the defendant's right not to testify. Appellant also missed the individual questioning of prospective jurors. Appellant was not present to assist his attorney in choosing which prospective jurors to peremptorily challenge.

 Under the Sixth Amendment, the defendant must be present at the commencement of the trial proceedings. After that time, the defendant may voluntarily absent himself from the trial without a violation of his Sixth Amendment right to be present during all phases of the trial. *See Taylor v. United States*, 414 U.S. 17, 19, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973) (per curiam); *Miller v. State*, 692 S.W.2d 88, 90–91 (Tex.Crim.App.1985). In this case, appellant was present at the commencement of the voir dire. Appellant's attorney's comments to the trial court and the court's comments to the venire permit the inference that appellant's absence was voluntary. No evidence suggests his absence was involuntary. Thus, appellant's Sixth Amendment rights were not violated.[2]

 Under article 33.03 of the code of criminal procedure, the defendant must be personally present at the trial until the jury has been selected. *See* TEX.CODE CRIM. PROC. ANN. art. 33.03 (Vernon 1979). This right to be present until selection of the jury cannot be waived. *See Miller*, 692 S.W.2d at 91. Therefore, appellant's rights under article 33.03 of the code of criminal procedure were violated because appellant was not personally present until the jury was selected. *See Bledsoe v. State*, 936 S.W.2d 350, 351 (Tex.App.-El Paso 1996, no pet.).

---

**2.** Appellant asserts his absence from the voir dire proceeding violated his rights under article one, section ten of the Texas Constitution. Appellant does not argue that the state constitution provides him greater protection than the federal constitution. Therefore, he has

not preserved his state constitutional claim. *See Emery v. State*, 881 S.W.2d 702, 707 n. 8 (Tex.Crim.App.1994), *cert. denied*, 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995).

Before we can reverse the trial court for violating the statutory requirement that the defendant must be personally present at trial, we must determine whether the error is of constitutional dimension or affects a substantial right of appellant. If so, we must reverse unless we determine the error did not contribute to the conviction or punishment. If the error was not of constitutional dimension or did not involve a substantial right, then we must disregard the error. *See* Tex. R.App. P. 44.2. As discussed above, the error was statutory, not constitutional. Therefore, we may not reverse unless we determine the error affected a substantial right.

A substantial right is affected when the error (1) had a "substantial and injurious" effect or influence in determining the jury's verdict or (2) leaves one in grave doubt whether it had such an effect. *See O'Neal v. McAninch,* 513 U.S. 432, 435–36, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995); *United States v. Arutunoff,* 1 F.3d 1112, 1118 (10th Cir.), *cert. denied,* 510 U.S. 1017, 114 S.Ct. 616, 126 L.Ed.2d 580 (1993); *see also King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *Montez v. State,* 975 S.W.2d 370, 373 (Tex.App.-Dallas 1998, no pet.). A substantial right is not affected and the error is harmless if, after reviewing the entire record, the appellate court determines the error did not influence, or had only a slight influence, on the trial's outcome. *See United States v. DeAngelo,* 13 F.3d 1228, 1233 (8th Cir.), *cert. denied,* 512 U.S. 1224, 114 S.Ct. 2717, 129 L.Ed.2d 842 (1994); *Montez,* 975 S.W.2d at 373. Our task, therefore, is not simply to identify what particular substantial right may have been affected, but is to determine whether the error influenced the trial's outcome. *See Montez,* 975 S.W.2d at 373.

In this case, the right of the defendant was the right to be present during the entire voir dire. The effect of that right is the ability to assist defense counsel in the exercise of peremptory challenges.

The court of criminal appeals has held no violation of substantial rights occurs during the voir dire unless the record shows the defendant was denied a fair and impartial jury. *See Ladd v. State,* 3 S.W.3d 547, 562 (Tex.Crim.App.1999) (citing *Jones v. State,* 982 S.W.2d 386, 394 (Tex.Crim.App. 1998), *cert. denied,* —— U.S. ——, 120 S.Ct. 444, 145 L.Ed.2d 362 (1999)), *petition for cert. filed,* No. 99–7472 (Dec. 17, 1999). In this case, the record does not show the jury selected in appellant's absence was unfair or partial. Therefore, even though appellant's right to be present during all portions of voir dire was violated, the error did not affect a substantial right. Accordingly, we must disregard the error. *See* Tex.R.App. P. 44.2. We overrule appellant's third point of error.

## CONFRONTATION

In his fourth point of error, appellant contends the trial court erred by precluding appellant from asking a State's witness about his prior criminal record. The State called James Conway, appellant's cellmate, who had been imprisoned for theft of fiduciary funds. Conway testified that appellant bragged about committing the offenses and described them to him. During cross-examination, appellant's attorney asked Conway if he had a criminal record other than for the offense he admitted, and he answered, "No felonies." When appellant's attorney again asked about any "other criminal record," the State objected, asserting the question was improper. The trial court sustained the objection. Appellant did not make a bill of exception, nor does the record show how Conway would have answered the question. The record contains no evidence of what offenses other than theft of fiduciary funds Conway had committed.

Rule 103 of the rules of evidence provides that error cannot be predicated upon a ruling excluding evidence unless the substance of the evidence was made known to the trial court by offer or was apparent from the context of the proceeding. *See*

TEX.R. EVID. 103(a)(2); *Williams v. State,* 937 S.W.2d 479, 489 (Tex.Crim.App.1996). In this case, appellant did not make the substance of Conway's testimony known to the trial court, and the substance was not apparent from the context of the proceeding. Accordingly, appellant has not preserved error on this issue. We overrule appellant's fourth point of error.

## PUNISHMENT CHARGE

■ In his fifth point of error, appellant contends the jury charge in each case at the punishment stage was misleading and prejudicial to appellant. Appellant did not object to the charges in the trial court. Thus, this Court may not reverse the trial court unless the record shows the error, if any, was so egregiously harmful that appellant did not receive a fair and impartial trial. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). We must assess the actual degree of harm in light of the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the entire record. *See Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996); *Arline v. State,* 721 S.W.2d 348, 351–52 (Tex.Crim.App.1986).

In this case, appellant argues the punishment charges are erroneous and egregiously harmful because they refer to "Paragraph II" of the indictments, and none of the indictments has a section labeled "Paragraph II." Appellant argues this failure to clearly instruct the jury on the law regarding enhancement of punishment deprived him of a fair and impartial jury.

The charges instructed the jury as follows:

The defendant, Billy Joel Tracy, has been found guilty by you of the offense of [assault, aggravated assault, and burglary of a habitation], *as alleged in the first paragraph of the indictment. The indictment alleges* that prior to the commission of the offense of [assault,

aggravated assault, and burglary of a habitation], *in the second paragraph* the defendant was duly convicted of a felony, namely, Retaliation, in the Criminal District Court Number One of Tarrant County. . . .

\* \* \*

■ Now, if you find from the evidence beyond a reasonable doubt that prior to the commission of the offense of [assault, aggravated assault, and burglary of a habitation], of which you have found defendant guilty, he was duly and legally convicted of a felony, to wit:

(a) Retaliation, ... [a]nd that the judgment of conviction [for retaliation], if any, became final prior to the commission of the offense of [assault, aggravated assault, and burglary of a habitation] . . .

Then, in such event, you will find the allegations are "True" and so state in your verdict on the form No. 1. . . .

(Emphasis added.) "Verdict Form # 1" attached to the charge in each case permitted the jury to answer:

We, the Jury, having found the defendant, Billy Joel Tracy, "Guilty" of the offense of [assault, aggravated assault, and burglary of a habitation], as alleged in Paragraph I of the indictment, further find that the allegation in Paragraph II of the indictment herein is "True". . . .

The charges clearly defined what was meant by "Paragraph I" and "Paragraph II" of the indictments. Moreover, the prosecutor explained to the jurors the instructions in the charges regarding enhancement. We conclude the references to "Paragraph II" of the indictments were not so egregiously harmful that appellant did not receive a fair and impartial trial. Appellant's argument lacks merit.

■ Appellant also asserts the charges' failure to instruct the jurors on the use of their personal notes during their

deliberation deprived him of a fair trial. The records in these cases do not show any juror took notes during the trial. *Cf. Price v. State,* 887 S.W.2d 949, 950–51 (Tex.Crim.App.1994) (record showed jurors took notes, and the notes were part of the record on appeal). Therefore, appellant has not shown the trial court erred. We overrule appellant's fifth point of error.

We affirm the trial court's judgments.