**AFFIRMED and Opinion Filed November 22, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00190-CR**
**No. 05-22-00191-CR**
**No. 05-22-00192-CR**

**STEVE ERIC ROBERSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F-2051158-Q, F-2051159-Q, and F-2051160-Q**

## MEMORANDUM OPINION

Before Justices Molberg, Pedersen, III, and Miskel
Opinion by Justice Pedersen, III

A jury found appellant guilty of two charges of aggravated assault. The trial court sentenced appellant to sixty years' confinement for one offense and twenty years' confinement for the other. Additionally, the jury found appellant guilty of causing serious bodily injury to an elderly person. The trial court assessed punishment at sixty years' confinement therefor. Appellant brings eight issues on appeal challenging all three judgments. We affirm the three judgments.

## BACKGROUND

All three complaining witnesses testified at appellant's trial.

The record contains the following testimony of Antwaneequa Anderson: She met appellant in 2008 or 2009. They had children together and lived together but did not marry. She subsequently resided with her parents, Jacqueline Anderson and Alton Anderson. On January 6, 2020, she was with her parents in their apartment. Appellant knocked at the door. She opened it, and appellant walked in. He told her, "I want you to come back home. You gonna come back home." She replied, "No." He hit her face with his fist. She threatened to call police, and he replied, "I'm gonna go in here with your mom and daddy." He walked toward her parents' room and pulled out a firearm. She heard gunfire. Appellant was by the kitchen area at the entrance to her parents' bedroom. She couldn't remember how many times he fired. She went to a bookshelf where she kept her pistol. "Then I reach for my gun, and I get it down, and I start shooting at him." She fired at appellant and missed. He turned and fired at her. Appellant shot her. She tried to block appellant from their son's room. Appellant was still shooting at her. He left the apartment. She had been shot in the hand, arm, and shoulder. She ran into her parents' room. Her father was lying on the floor. He was unresponsive, and she thought he was dead. Antwaneequa had been shot in the hands, shoulder, and arm. The prosecutor asked her, "You're a hundred percent sure that Steve Eric Roberson shot your dad, your mom, and you on January 6, 2020?" She replied, "Yes."

The record contains the following testimony of Alton Anderson: Alton Anderson was seventy-one years old on January 6, 2020. On that date, he was asleep in his bed. He awoke and saw appellant standing in the doorway of his bedroom and raising his hand to shoot. Appellant had a pistol and fired at him. He thought he was shot three times. He tried to stand up and lean on a dresser when appellant shot him in the arm. He fell to the floor and thought he would die. The prosecutor asked, "[T]his man here in the courtroom Steve Roberson is the one that shot you on January 6, 2020?" Alton replied, "Yes."

Antwaneequa's mother, Jacqueline Anderson, testified as follows: She was sixty-four years old on January 6, 2020. On that date, she was in her bedroom at her apartment. She heard a knock at the apartment door and heard Antwaneequa say, "Why you going in my mother's room?" Then appellant was at her bedroom door. She "quickly" recognized it was appellant because she had known him for years. He had a gun in his hand. Appellant's hand went up, and "all of a sudden I saw flashes." Appellant shot Alton twice and then shot her twice. She was hit on an arm and on her back. She fell to the floor, and appellant shot Alton again. She saw Alton and Antwaneequa were injured. The prosecutor asked, "And just to be clear, the individual seated at this table over here, Mr. Roberson, is the one that did that to all three of y'all." She responded, "Yes. Yes, he did."

The jury convicted appellant for aggravated assault of Antwaneequa Anderson,[1] for which the trial court assessed punishment at sixty years' confinement. The jury convicted appellant of injury to an elderly individual for shooting Alton Anderson,[2] and the trial court assessed punishment therefor at sixty years' confinement. The jury convicted appellant of aggravated assault of Jacqueline Anderson, and the trial court assessed punishment therefor at twenty years' confinement.

This appeal followed.

---

[1] Section 22.02 of the Texas Penal Code provides:

> (a) A person commits an offense if the person commits assault as defined in § 22.01 and the person:
>
> > (1) causes serious bodily injury to another, including the person's spouse; or
> >
> > (2) uses or exhibits a deadly weapon during the commission of the assault.

PENAL § 22.02. Section 22.01, defining assault, in part provides: "(a) A person commits an offense if the person: (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse . . . ." PENAL § 22.01(a)(1). Section 22.02(b)(1)(A) provides aggravated assault is a first-degree felony if "the actor uses a deadly weapon during the commission of the assault and causes serious bodily injury to a person whose relationship to or association with the defendant is described by Section 71.0021(b) . . . Family Code." PENAL § 22.02(b)(1)(A).

[2] Section 22.04(a) of the Texas Penal Code provides:

> (a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence by act . . . causes to a . . . elderly individual:
>
> > (1) serious bodily injury;
> >
> > (2) serious mental deficiency, impairment, or injury; or
> >
> > (3) bodily injury.

Section 22.04(c)(2) defines "elderly individual" as "a person 65 years of age or older." Section 22.04(e) provides, "An offense under Subsection (a)(1) or (2) . . . is a felony of the first degree when the conduct is committed intentionally or knowingly. . . ."

## APPELLANT'S REMOVAL FROM THE COURTROOM
## DURING VOIR DIRE

Appellant complains in his first three issues on appeal of his removal from the courtroom during jury voir dire proceedings. He complains,

> Appellant's Issue 1: The trial court erred in removing the defendant from the courtroom during jury selection thereby violating his constitutional right to be present during every phase of the trial proceedings against him as afforded by the Sixth and Fourteenth Amendments to the United States Constitution.

> Appellant's Isssue 2: The trial court erred in removing the defendant from the courtroom during jury selection thereby violating his constitutional right to be present during every phase of the trial court proceedings against him as afforded by Article I, Section 10 of the Texas Constitution.

> Appellant's Issue 3: The trial court erred in removing the defendant from the courtroom during jury selection thereby violating his constitutional right to be present during every phase of the trial proceedings against him as afforded by Article 33.03 of the Texas Code of Criminal Procedure.

A pretrial hearing on February 16, 2022, concerned appellant's decision of whether the trial court or the jury would assess possible punishment. The trial court explained the law, and appellant interrupted the trial judge and said, "That's a lie." The trial court responded, "That's what the law says." Appellant responded "That ain't what no law say." The trial court stated, "There is no way that I can put Mr. Roberson back in the holdover. The microphone's not working back there, but I've decided to go ahead and let him come out here and just spew whatever he wants to say . . ." Appellant interrupted the trial court, "Cause you lyin. You lyin and I know it."

–5–

Appellant continued to interrupt the trial court. At the hearing's conclusion, the trial court stated, "You are shooting yourself in the foot with your behavior." Appellant responded, "You shooting yourself in the foot."

The next day, the trial court stated proceedings were on the record. Appellant continued to interrupt and attempted to argue with the trial court. He interrupted the trial court again and said, "You lyin." Appellant continued to interrupt. Subsequently, the trial court stated to the court reporter, "Make sure it's clear that he's talking while I'm talking . . ." Appellant interrupted, "I can speak. You gonna tell me I can't?" Appellant continued to interrupt. The trial court discussed with counsel how to conduct proceedings if appellant were removed from the courtroom:

> THE COURT: Mr. Ashford, how did y'all do it before [when] you had somebody that had to [be] put outside? We're gonna try to get this done. We are gonna try this if I have to stand on my head.
>
> MR. ASHFORD: There was a laptop right there at the—at the glass.
>
> MR. SEARCEY: We had to stream it to him.
>
> THE COURT: I'll get my laptop.

The proceedings moved to the central jury room. The trial court began jury voir dire. Appellant soon interrupted the trial court as it introduced the jury to the court reporter. The trial court said, "Mr. Roberson, please." He continued to interrupt. The trial court said: "Mr. Roberson, if you would, please. We've talked about this. Work with us, Mr. Roberson." Appellant responded, "I am working with you." Soon after, appellant again interrupted the trial court, which stated, "Please, Mr. Roberson,

please." The trial court stated to the court reporter, "Kendra, take what you can, and take me when there's—when there are two of us talking." Soon after, appellant interrupted the trial court and stated, "That's a lie." The trial court responded, "Mr. Roberson, please." Appellant continued to interrupt the trial court, which stated to the court reporter, "Take what you can, Kendra, and when you can't and you have two choices, take me." Appellant continued to interrupt the trial court and stated, "I can talk. Freedom of speech, right?" After additional interruption by appellant, the trial court stated,

> All right. We're gonna do the best we can. The law also requires that an individual charged with a crime be present. Be present at all hearings, at all proceedings, absolutely be present during jury selection.

> So I am going to do the best I can, including stand on my head maybe before it's over, to try to see that Mr. Roberson remains out here so that he can see you and see what the attorney for the State says and what the attorney for the defendant says and be able to assist his attorney as the law also contemplates in handling the case. I'm gonna do the best I can to keep Mr. Roberson out here, and I'm really hoping that he will cooperate with that so that we can talk to y'all and let a lot of y'all go.

> Subsequently, appellant interrupted and attempted to argue with the trial court

at length. Eventually, another exchange occurred, ending as follows:

> THE COURT: Mr. Roberson, if you'll wait just a second.

> THE DEFENDANT: Then you put a different clerk on there, which ain't no DA. Don't lie in front of these motherfucking people. Tell the truth.

> THE COURT: Out we go.

> THE DEFENDANT: Bitch, tell the truth, ho.

THE COURT: Out we go.

THE DEFENDANT: What the fuck you talking about? Tell the motherfucking truth, bitch. Fuck you talking about? Don't lie. You heard what the fuck I said. Fuck you lying for?

The court reporter's record indicates appellant then was removed from the courtroom.

The trial judge then addressed potential jurors, saying in part:

And so, please know that many things have gone on before today, and people in the court system are often unhappy. I understand that. You are still gonna be asked as a jury—obviously, we don't wipe things out of our mind, and I do not know what's gonna happen up in the courtroom, certainly don't know what's gonna happen when witnesses begin to testify, but I'm gonna do the best I can to see that he is in the courtroom, if we're able to do that, but we're gonna still ask you, even though you're not required to wipe your mind, I don't know how you do that, how anybody can do that but still required to ask you to look at the witness, to consider the law, to base your verdict on what comes out because this isn't evidence.

This is not evidence. You are entitled to consider any number of things in making a decision, but as far as guilty or not guilty of two aggravated assault with a deadly weapons and injury to an elderly person, that's got to come from the evidence, and I promise I'll be right back.

The trial court subsequently stated appellant could view voir dire proceedings via video in another courtroom. It said, "We're about to—we're about to log him on up in—upstairs in the courtroom." The trial court explained how court personnel would arrange for appellant's remotely viewing and listening to the proceedings. The trial court stated, "[W]e are doing everything we can to be sure that he's able to watch in the absence . . . Doing the best we can to make sure that he has access, and at least it's there." The trial court then resumed voir dire proceedings.

The trial court admonished potential jurors:

Presumption of innocence. You—I know we've had a couple little things happen this morning, and there is a likelihood that we can have some more happen. I am gonna ask you, as adults who have had experiences in life and who know how things work and how upsetting situations can be, I'm going to ask you, despite what the unhappiness of—of Mr. Roberson, who clearly he is unhappy and angry, I'm gonna ask you to, despite any of those kind of things, to presume him innocent at the beginning of the trial because he is.

At this point, he is presumed innocent of these three offenses. Why? Because you hadn't heard anything. You hadn't heard a witness. You hadn't seen a document. You haven't seen a videotape. You haven't heard from any of these people.

He's not guilty right now if you were asked to decide, but you have to be able to say, regardless of what I saw this morning, which is unfortunate, and Mr. Roberson has—we have many times tried to say, this is what you wanted. Here you are. Please don't. This is hurting you, but I'm asking you now to despite that, to please give Mr. Roberson a fair trial.

Listen to his—listen to the evidence. If you think he's not guilty, despite any unhappy behavior, anger, disruption, find him not guilty. If you believe he is guilty, find him guilty. That's all we're asking—all we're asking you to do.

Appellant argues his exclusion from the courtroom violated the Sixth and Fourteenth amendments to the United States Constitution, Article I, section 10 of the Texas Constitution, and Article 33.03 of the Texas Code of Criminal Procedure. *See* U.S. CONST. amends. VI, XIV; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 33.03.

We review a trial court's decision to exclude a criminal defendant from trial for an abuse of discretion. *See, e.g., Kessel v. State,* 161 S.W.3d 40, 44 (Tex. App.—

Houston [14th Dist.] 2004, pet. ref'd); *see also Illinois v. Allen,* 397 U.S. 337, 343 (1970) (courts must be given sufficient discretion to determine the appropriate manner of handling a disruptive defendant in the courtroom). We will uphold the trial court's ruling so long as it is "within the zone of reasonable disagreement." *Kessel,* 161 S.W.3d at 44.

The Sixth Amendment's right of confrontation requires any defendant threatened with the loss of liberty to be physically present at all phases of the criminal proceedings against him. *Allen,* 397 U.S. at 338; *Miller v. State,* 692 S.W.2d 88, 90 (Tex. Crim. App. 1985); *see also Sanchez v. State,* 702 S.W.2d 258, 259 (Tex. App.—Dallas 1985, pet. ref'd) (criminal defendant has a fundamental right to be present at every stage of his trial). The Texas Constitution provides the defendant with a similar right to be present in the courtroom during his trial. *See* TEX. CONST. art. I, § 10; *Sanchez,* 702 S.W.2d at 259.

The Court in *Allen* held removal from the courtroom would be warranted if, after being warned by the trial court of the possibility of removal, the defendant continues to conduct himself "in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." 397 U.S. at 343. For constitutional purposes, the defendant need only be present in the courtroom at the commencement of trial, which includes any time after the voir dire process has begun, and may thereafter voluntarily absent himself from the trial, either expressly or through his disruptive conduct. *See Sumrell v. State,* 326 S.W.3d 621, 624 (Tex.

–10–

App.—Dallas 2009, pet. dism'd); *see also Miller,* 692 S.W.2d at 91 (defendant who is present at the time voir dire begins, but who thereafter voluntarily removes himself from the courtroom, forfeits his Sixth Amendment rights); *Tracy v. State,* 14 S.W.3d 820, 826 (Tex. App.—Dallas 2000, pet. ref'd) (defendant's Sixth Amendment rights were not violated when he voluntarily absented himself from trial after the commencement of voir dire, but before jury was selected); *Ashley v. State,* 404 S.W.3d 672, 680 (Tex. App.—El Paso 2013, no pet.) ("After commencement of trial proceedings, a defendant may voluntarily absent himself from the trial without a violation of his Sixth Amendment right to be present during all phases of the trial.").

Appellant's conduct after commencement of voir dire proceedings, quoted above, was so disorderly, disruptive, and disrespectful of the court that his trial could not be carried on with him in the courtroom. *See Allen*, 397 U.S. at 343; *Sumrell,* 326 S.W.3d at 624. The trial court indicated prior to appellant's removal from the courtroom that it considered his possible removal due to his conduct, as addressed above. Consequently, we conclude appellant's removal from the courtroom during jury voir dire was not constitutionally improper. *See Barrier v. State*, Nos. 05-20-00088-CR, 05-20-00089-CR, 05-20-00090-CR, 05-20-00091-CR, 05-20-00092-CR, 05-20-00093-CR, 2021 WL 2562145, at \*5 (Tex. App.—Dallas June 23, 2021, pet. ref'd) (memo op., not designated for publication) (appellant's removal from courtroom during voir dire due to his behavior did not violate the Sixth Amendment of the U.S. Constitution or Article I, section 10 of the Texas Constitution).

In Texas, however, a defendant is given additional protection by statute and has an absolute right to remain in the courtroom until the jury has been selected. *Sumrell,* 326 S.W.3d at 623, n.2 ("[t]his right is codified under state law in article 33.03 of the Texas Code of Criminal Procedure, which is even more protective of a defendant's rights than the constitutional provisions because the right to be present cannot be waived before the jury is selected.") (citing *Miller,* 692 S.W.2d at 91). Article 33.03 of the Texas Code of Criminal Procedure provides, in relevant part:

> In all prosecutions for felonies, the defendant must be personally present at the trial ... provided, however, that in all cases, when the defendant voluntarily absents himself after pleading to the indictment or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion.

CRIM. PROC. art. 33.03.

Although a defendant may waive his Sixth Amendment right to be present in the courtroom after trial commences, under Article 33.03, "an accused's right to be present at his trial is unwaivable until such a time as the jury has been selected." *Miller,* 692 S.W.2d at 89. Similarly, as this Court has concluded, while a defendant's Sixth Amendment rights are not violated when the defendant voluntarily absents himself after his trial has commenced, his statutory rights are violated when the trial court holds jury selection in his absence, because the "right to be present until selection of the jury cannot be waived." *Tracy*, 14 S.W.3d at 826; *Ashley*, 404 S.W.3d 680 (distinguishing between the constitutional right to be present at trial that may be forfeited, and the statutory right to be present through jury voir dire, which may not

–12–

be waived); *see also Bledsoe v. State,* 936 S.W.2d 350, 351 n.2 (Tex. App.—El Paso 1996, no pet.) (given the mandatory language of the statute, it is error to proceed with a trial if the defendant is absent during jury selection regardless of the reasons for the absence).

However, to the extent appellant's removal during voir dire violated article 33.03, we conclude any error was not reversible error. Because the error was statutory, we may not reverse unless we determine the error affected a substantial right. *See Tracy*, 14 S.W.3d at 827. A substantial right is affected when the error (1) had a "substantial and injurious" effect or influence in determining the jury's verdict or (2) leaves one in grave doubt whether it had such an effect. *See id.* A substantial right is not affected and the error is harmless if, after reviewing the entire record, the appellate court determines the error did not influence, or had only a slight influence, on the trial's outcome. *See id.* The court of criminal appeals has held no violation of substantial rights occurs during voir dire unless the record shows the defendant was denied a fair and impartial jury. *See id.* "In this case, the record does not show the jury selected in appellant's absence was unfair or partial." *Barrier*, 2021 WL 2562145, at *5. Appellant does not argue to the contrary. Therefore, even though appellant's statutory right to be present during all portions of voir dire was violated, the error did not affect a substantial right. Accordingly, we disregard the error. *See* TEX. R. APP. P. 44.2.

We overrule appellant's first, second, and third issues.

–13–

## ACCESS TO VOIR DIRE PROCEEDINGS

In his fourth appellate issue, appellant complains the trial court erred in removing him from the courtroom during jury selection without providing him access to listen to the proceedings. He asserts the record "does not contain any indication" he was able to listen to voir dire proceedings during removal. As addressed above, the record indicates appellant was provided the ability to contemporaneously view and listen to proceedings after his removal. Accordingly, we overrule appellant's fourth issue on appeal.

## COMPETENCE TO STAND TRIAL

In his fifth issue on appeal, appellant asserts, "The trial court abused its discretion and reversibly erred in continuing the trial of these cases when evidence of Appellant's incompetency was revealed by his conduct in the courtroom that caused the trial judge to remove him from the courtroom on several occasions." Appellant asserts the trial court should have made an informal inquiry with the commencement of the jury selection.

We review a trial court's decision not to conduct an informal competency inquiry for abuse of discretion. *See Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009), *superseded by statute on other grounds as recognized in Turner v. State*, 422 S.W.3d 676, 692 & n.31 (Tex. Crim. App. 2013). We do not substitute our judgment for that of the trial court, and we will not reverse its decision unless it is arbitrary or unreasonable. *See id.*

–14–

A person is incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person. *See* CRIM. PROC. art. 46B.003(a). A trial court must conduct an informal competency inquiry if evidence comes to the court's attention suggesting the defendant may be incompetent. *See id.* art. 46B.004(b).

At the informal inquiry stage, there must be "some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018) (quoting article 46B.004(c) of the code of criminal procedure). This standard requires more than a scintilla of evidence that rationally may lead to a conclusion of incompetency. *See id.* at 564. The trial court must consider only evidence of incompetency, and it must not weigh evidence of competency against the evidence of incompetency. *See id.* Further, some evidence must be presented at the informal inquiry stage to show that a defendant's mental illness is the source of his inability to participate in his own defense. *See id.* It is not enough to present evidence of either a defendant's mental illness alone or his refusal to assist counsel; there must be some evidence indicating that the defendant's inability to rationally engage with counsel is caused by mental illness. *See id.*

Evidence suggesting need for an informal inquiry may be based on observations made in relation to one or more of the factors described by Article 46B.024 or on any

–15–

other indication that the defendant is incompetent. *See Ware v. State*, 05-19-00365, 2020 WL 4499797, at *1 (Tex. App.—Dallas Aug. 5, 2020, no pet.) (mem. op., not designated for publication) (citing article 46B.004(c-1) of the code of criminal procedure). The article 46B.024 factors include the defendant's capacity to: (a) "rationally understand the charges against the defendant and the potential consequences of the pending criminal proceedings"; (b) "disclose to counsel pertinent facts, events, and states of mind"; (c) "engage in a reasoned choice of legal strategies and options"; (d) "understand the adversarial nature of criminal proceedings"; (e) "exhibit appropriate courtroom behavior"; and (f) "testify." *Id.* art. 46B.024(1)(A)–(F). Considerations also include whether, "as supported by current indications and the defendant's personal history," the defendant suffers from a mental illness and, if so, how it affects the defendant's capacity to reasonably and rationally participate in his own defense. *See id.* art. 46B.024(2), (4).

Appellant asserts:

- "Appellant was disruptive and acted out spontaneously and erratically."

- ". . . [Appellant] engaged in frequent outbursts before and during trial, and refused to communicate with his attorney and the trial court."

- "[Appellant's] behavior was inconsistent with someone that was presumed competent."

- "[Appellant's] competency should have been called in question by his behavior."

–16–

Based on our review of the record, we find no evidence from any source to suggest to the trial court that appellant was incompetent to stand trial. *See Boyett*, 545 S.W.3d at 563-64. We see no evidence that appellant was mentally ill, that he was unable to assist counsel, or that he was unable to rationally engage with counsel due to mental illness. *See id.* Appellant's outbursts and interjections generally were responsive to the trial court's statements, showing his understanding of the proceedings. *See Cahill v. State*, Nos. 05-21-00504-CR, 05-21-00505-CR, 05-21-00506-CR, 05-21-00507-CR, 05-21-00508-CR, 05-21-00509-CR, and 05-21-00510-CR, 2022 WL 17828927, at *4 (Tex. App.—Dallas Dec. 21, 2022, no pet.) (mem. op., not designated for publication) (rejecting argument, made by appellant here, that repeated outbursts during trial should have raised doubts as to his competency). We see no evidence that appellant's conduct was "truly bizarre." *Silvey v. State*, No. 05–11–01443–CR, 2013 WL 398742, at *1 (Tex. App.—Dallas Jan. 31, 2013, pet. ref'd) (mem. op., not designated for publication). Rather, "His failure to comply with the trial court's directions concerning proper courtroom decorum is more consistent with obstinacy than incompetence." *Cahill*, 2022 WL 17828927, at *4; *see Turner*, 422 S.W.3d at 691 ("Indeed, even a mentally ill defendant who resists cooperating with his counsel may nevertheless be found competent if the manifestations of his particular mental illness are not shown to be the engine of his obstinacy."). Appellant's conduct was consistent with the trial court's assessment of it as angry, unhappy, and disruptive. Moreover, the fact that appellant made outbursts during trial is not

evidence of an inability to communicate with counsel or to appreciate the proceeding against him. *See Moore v. State*, 999 S.W.2d 385, 395 (Tex. Crim. App. 1999). If such actions were enough to demonstrate incompetency, a defendant could easily avoid prosecution through immature behavior. *See id.*

Additionally, appellee's counsel asserts he must correspond with appellant and that "The Texas Department of Corrections-Institutional Division lists Appellant being incarcerated at the Skyview Unit, which is a Psychiatric Unit." He argues, "[T]his is easily verifiable on the internet and suggest[s] that Appellant should have been examined contemporaneously with the commencement of jury selection as competency can be a very fluid mental state." We may not consider counsel's assertion because it is not in the appellate record. *See Whitehead v. State,* 130 S.W.3d 866, 872 (Tex. Crim. App. 2004) (appellate court may not consider factual assertions that are outside record); *Hailey v. State*, 413 S.W.3d 457, 491 (Tex. App.—Fort Worth 2012, pet. ref'd) ("Mere assertions in a brief not supported by the record will not be considered on appeal."). Moreover, the mere fact of appellant's residence at a psychiatric unit—even if we could consider such non-record assertions—would not trigger a trial court's obligation to conduct an informal inquiry. *See Turner*, 422 S.W.3d at 691 (mental illness does not by itself suggest incompetency; there must also be evidence raising the possibility that the defendant's mental illness "operates in such a way as to prevent him from rationally understanding the proceedings against him or engaging rationally with counsel in pursuit of his own best interest.").

Reviewing the record only for possible evidence of incompetency, we determine there was no evidence from any source that would suggest to the trial court that defendant might have been incompetent to stand trial. *See Boyett*, 545 S.W.3d at 563 (quoting article 46B.004(c) of the code of criminal procedure).

We conclude the trial court did not abuse its discretion in failing to sua sponte inquire into appellant's competency to stand trial. Accordingly, we overrule appellant's fifth issue.

ADMISSION OF VIDEO EVIDENCE

In his sixth issue, appellant complains, "The trial court abused its discretion and reversibly erred in overruling appellant's objection to the state's exhibit numbers 144 and 145 depicting appellant in police station video interview room." Appellant objected at trial to their admission based on rule 403 of the Texas Rules of Evidence. *See* TEX. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.").

Appellant argues the videos are of (1) "appellant misbehaving in the interview room"; (2) appellant "kicking at the door"; (3) appellant "being confronted by officers"; (4) appellant's not wearing a shirt; and (5) appellant "being manhandled and tased by the officers."

The record contains unobjected-to testimony of two Dallas Police officers who

testified about events depicted in exhibits 144 and 145 prior to the exhibits' admission as evidence. Dallas Police Officer Reininger testified he was at Dallas Police Department Headquarters. He testified appellant shouted "very loudly." He testified appellant attempted to kick down the door "so hard that, you know, the door was moving and the wall was moving, even when we were trying to hold it." He testified that he and another officer had to enter the room to try to handcuff appellant. He testified: "We tried to talk to him for a little while to calm him down, but he ended up, you know, not responding to any commands, not turning around, and he started balling his fists and moving forward a little bit, so we had to go hands on." He testified appellant wanted to speak with Antwaneequa Anderson. He testified he tased appellant. He testified appellant was taken downstairs at headquarters and then by ambulance to Parkland Hospital. Dallas Police Officer Purkey also was at Dallas Police Department Headquarters after appellant had been taken there. He testified appellant "started banging on the door and wall" in the interview room at headquarters. He testified he entered the room to handcuff appellant because "it looked like he was gonna bust the door."

As noted, the officers' testimony provided evidence of events depicted in exhibits 144 and 145 and identified by appellant in his argument here. Appellant did not object to the testimony of Reininger and Purkey. In these circumstances, even if admission of the video evidence was erroneous, which we assume here only for purposes of analysis, "erroneously admitting evidence 'will not result in reversal when

–20–

other such evidence was received without objection, either before or after the complained-of ruling.'" *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010); *see Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010) (any error in admission of exhibit was harmless in light of proper admission of "very similar" evidence without objection); *Hill v. State*, No. 05-08-01011-CR, 2020 WL 2124520, at *9 (Tex. App.—Dallas May 5, 2020, no pet.) (mem. op., not designated for publication). Accordingly, even if admission of exhibits 144 and 145 was erroneous—which we expressly do not decide—we conclude any such error was harmless.

We overrule appellant's sixth issue.

### ADMISSION OF TESTIMONY

In his seventh issue, appellant complains, "The trial court erred in overruling appellant's objection to the state questioning witness Antwaneequa Anderson about how she felt about members of appellant's family questioning her about paternity of her child." Appellant complains of admission of the following testimony:

Q. Okay. And how did you feel when they questioned the paternity of your kid?

MR. ASHFORD: Objection, relevance.

THE COURT: How did you feel?

MR. SEARCEY: Yes, Judge. I'm just asking her perception of what was going through her mind.

THE COURT: Okay. Overruled. Go ahead. You may answer.

A. I was kind of mad.

Appellant argues on appeal the objected-to evidence should have been excluded under Texas Rule of Evidence 403.

Appellant's trial objection, however, was "relevance." *See id.* 401 (evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the claim); *see id.* 402 ([R]elevant evidence is admissible unless certain identified legal authority provides otherwise. Irrelevant evidence is not admissible.).

This Court has consistently held a trial objection on the ground of relevance does not preserve for appellate review an issue under Rule 403. *See, e.g., Crenshaw v. State*, No. 05-11-01550-CR, 2022 WL 6194236, at *1 (Tex. App.—Dallas Nov. 30, 2012, pet. ref'd) (mem. op., not designated for publication); *Kindle v. State*, No. 05-19-01268, 2021 WL 2281665, at *5 (Tex. App.—Dallas June 4, 2021, pet. ref'd) (mem. op., not designated for publication) (citing *Hiatt v. State*, No. 05-19-00564-CR, 2020 WL 7021539, at *6 (Tex. App.—Dallas Nov. 30, 2020, no pet.) (mem. op., not designated for publication) (relevance objection does not preserve Rule 403 complaint)); *Jackson v. State*, No. 05-16-00706-CR, 2017 WL 2472838, at *2 (Tex. App.—Dallas June 8, 2017, no pet.) (mem. op., not designated for publication) (a specific rule 403 objection must be raised to preserve error because such an objection is not implicitly contained in relevancy objection); *and see* TEX. R. APP. P. 33.1 (requiring specific objection and ruling to preserve issue for review unless objection

is obvious from the context). We are bound to faithfully apply our own precedent. *See Tiller v. State,* No. 05-21-00653-CR, 2022 WL 2093008, at \*2 (Tex. App.—Dallas June 10, 2022, no pet.) (mem. op., not designated for publication) ("We are bound to follow our own precedent unless it conflicts with an opinion of the Court of Criminal Appeals."). Appellant failed to preserve a Rule 403 objection for our review.

Consequently, we overrule appellant's seventh issue.

SUFFICIENCY OF THE EVIDENCE

In his eighth issue, appellant argues, "The evidence is insufficient to support the conviction in each cause number for the offense of aggravated assault."[3]

In assessing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. A

---

[3] As addressed above, appellant was convicted of two counts of aggravated assault and one count of injury to an elderly individual. We interpret appellant's eighth issue as attacking all three judgments.

proper review of evidentiary sufficiency considers the cumulative force of the evidence. *See Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

When considering a claim of evidentiary insufficiency, a reviewing court does not sit as the thirteenth juror and may not substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The jury is permitted to draw reasonable inferences from the evidence adduced at trial. *See Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020). Additionally, the jury may use common sense, common knowledge, personal experience, and observations from life when drawing inferences. *See Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). However, "juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007).

We measure the sufficiency of the evidence against the hypothetically correct jury charge, defined by the statutory elements as modified by the charging instrument. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that accurately states the law, is authorized by the indictment, does not increase the State's burden of proof, and adequately describes the offense with which the defendant is charged. *See id.*

The prosecution must prove beyond a reasonable doubt the defendant is the person who committed the offense charged. *See Nelson v. State*, No. 05-21-00945-

–24–

CR, 2023 WL 6425689, at *3 (Tex. App.—Dallas Oct. 8, 2023, no pet. h.) (mem. op., not designated for publication). Identity may be proved by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *See id*. The testimony of a single eyewitness may be sufficient evidence to identify a defendant as a perpetrator. *See id*.

Appellant argues the evidence is insufficient to prove he is the person who committed the crimes for which he was convicted. He argues a defendant, even the most likely defendant, is presumed to be innocent unless his guilt is established beyond a reasonable doubt. He quotes final argument in the trial court in support of his appellate argument.

Each of the three victims had known appellant before the shootings. Each of the three eye-witnesses positively and without equivocation identified appellant as the person who shot them. Based on this direct evidence from the three complaining witnesses, we conclude a rational juror could have concluded beyond a reasonable doubt that appellant was the person who assaulted them. *See Jackson,* 443 U.S. at 319; *Nelson*, 2023 WL 6425689, at *3.

## CONCLUSION

We affirm the trial court's judgments.

/Bill Pedersen, III/
BILL PEDERSEN, III
JUSTICE

220190f.u05
220191f.u05
220192f.u05
Do Not Publish
Tex. R. App. P. 47.2(b)



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

STEVE ERIC ROBERSON,
Appellant

No. 05-22-00190-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-2051158-Q.
Opinion delivered by Justice
Pedersen, III. Justices Molberg and
Miskel participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 22nd day of November, 2023.



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

STEVE ERIC ROBERSON, Appellant

No. 05-22-00191-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District Court, Dallas County, Texas Trial Court Cause No. F-2051159-Q. Opinion delivered by Justice Pedersen, III. Justices Molberg and Miskel participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 22nd day of November, 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEVE ERIC ROBERSON,
Appellant

No. 05-22-00192-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-2051160-Q.
Opinion delivered by Justice
Pedersen, III. Justices Molberg and
Miskel participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 22nd day of November, 2023.